THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SEAN A. SMITH, Defendant-Appellant.

First District (5th Division)   No. 1—89—1842

Opinion filed January 17, 1992.

---

Randolph N. Stone, Public Defender, of Chicago (Robert T. Fox and Jeffrey M. Howard, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Kenneth T. McCurry, Assistant State's Attorneys, and Roger A. Malavia, law clerk, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Sean Smith (Smith), defendant, was charged with one count of unlawful firearm possession (Ill. Rev. Stat. 1987, ch. 38, par. 83—2(a)) and unlawful use of a weapon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(4)). Prior to trial, Smith filed a motion to quash his arrest and suppress evidence seized pursuant to a search. The motion to suppress was denied. On May 24, 1989, after a stipulated bench trial, Smith was found guilty of one count of unlawful use of a weapon, a Class A misdemeanor. (Ill. Rev. Stat. 1987, ch. 38, pars. 24—1(a)(4), 24—1(b).) Based on this conviction, Smith was sentenced to 79 days time considered served, and one year's conditional discharge.

This appeal concerns the admissibility of evidence obtained during the police "stop and frisk."

At the hearing on the motion to quash arrest and suppress evidence, Detective Patrick Fitzgerald of the Park Forest police department was the sole witness. He testified to the following facts.

On April 30, 1988, Detective Fitzgerald was patrolling the area around Central Park in an unmarked squad car. He saw Smith and a companion, Curt Rodenberg (Rodenberg), coming out of a park. Detective Fitzgerald made eye contact with Smith and recognized him from previous encounters. Smith was wearing a sweatshirt which was cut off at the sleeves, and he was carrying a large portable radio in one hand and a stick or a cane in the other. At the time, the men were not committing any criminal offenses, the officer was not responding to any crime reports, and he did not have an arrest warrant for Smith.

Smith and Rodenberg were walking westbound. Detective Fitzgerald then turned his squad car around and drove in the direction of Smith and Rodenberg. At that point he noticed Smith and Rodenberg turned around and started walking in the opposite direction. Subsequently, Rodenberg ran away and Smith quickened his pace.

When Detective Fitzgerald first spoke with Smith, he was in his car. He got out of the vehicle, approached Smith and asked him what he was doing. Smith responded, nothing. Smith then stated that he was just walking. There was no reason for Detective Fitzgerald to ask Smith questions, such as what his name was, because he knew who Smith was. Detective Fitzgerald then asked Smith where he was coming from. Smith responded that he was coming from McDonald's. Detective Fitzgerald testified that the only McDonald's in Park Forest was located in the opposite direction from which Smith came. However, Smith never specified which McDonald's he came from.

Detective Fitzgerald did not know what Smith was doing prior to coming out of the woods at Central Park. While speaking with Smith, Detective Fitzgerald observed a belt wrapped around Smith's neck that extended down underneath Smith's sweatshirt. The belt was the type of belt worn around people's pants.

Detective Fitzgerald stated that he did a *Terry* frisk for his own protection. The frisk was of the outer clothing of the defendant. He felt it was necessary to do a frisk because he had information that both Smith and Rodenberg had been carrying guns. He had received that information from another police officer approximately one month prior.

When doing the *Terry* frisk, Detective Fitzgerald recovered a .32 caliber revolver. This was located in a shoulder holster under Smith's armpit. Subsequently, Smith was placed under arrest.

In denying defendant's motion to suppress, the trial judge stated:

"Taken in totality, one party takes off, the other quickens his pace, all of a sudden that cannot be ignored if you are a policeman on the street; particularly, when he says he knows him and he knows that—he has been told that he was carrying a gun. Albeit thirty days ago, but he was carrying a gun. For that reason he made the stop.

\* \* \*

He gets out of the car and he sees a strap around his neck. What would a reasonable person do at that point but

conduct a search? This is the reason that I am going to deny your motion."

The evidence presented at the suppression hearing was later stipulated at a bench trial. No other evidence was presented at the trial. Defendant was found guilty of unlawful use of a weapon and sentenced to 79 days time considered served and one year's conditional discharge.

The only questions before us are (1) whether Detective Fitzgerald was justified in stopping Smith, and (2) if so, whether he had adequate grounds to frisk Smith's clothing for weapons.

The State defends the arrest and seizure on the theory that no stop within the meaning of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, of Smith ever occurred, and even assuming *arguendo* a stop did occur, it was supported by specific and articulable facts. Smith urges this court to find that the initial stop of Smith was invalid.

The Illinois Supreme Court has made it clear that a trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162, 535 N.E.2d 837; see also *People v. Winters* (1983), 97 Ill. 2d 151, 158, 454 N.E.2d 299; *People v. Holloway* (1981), 86 Ill. 2d 78, 91, 426 N.E.2d 871.) It is the function of the trial court on a motion to suppress to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence. *People v. Galvin*, 127 Ill. 2d at 163.

In appropriate circumstances, and in an appropriate manner, a police officer may approach an individual for purposes of investigating possible criminal behavior even without probable cause for arrest, provided that the officer's decision to stop is based on specific and articulable facts which, when taken with rational inferences from those facts, reasonably warrant the investigative intrusion. *Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879-80; *Galvin*, 127 Ill. 2d at 163.

Illinois has codified the holding in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, in sections 107—14 and 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, pars. 107—14, 108—1.01). (*People v. Lee* (1971), 48 Ill. 2d 272, 278-79, 269 N.E.2d 488.) Sections 107—14 and 108—1.01 provide as follows:

"§107—14. Temporary Questioning without Arrest. A peace officer, after having identified himself as a peace officer, may

stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." Ill. Rev. Stat. 1989, ch. 38, par. 107—14.

"§108—1.01. Search During Temporary Questioning. When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." Ill. Rev. Stat. 1989, ch. 38, par. 108—1.01.

The officer testified he stopped Smith after recognizing him in a public place and considering the circumstances of Smith's change of directions and quickened pace. The officer also testified that he had information that Smith and his companion were carrying weapons. These facts were sufficient to establish that the initial contact with Smith was not an arrest, but did meet the requirements of a justifiable "stop" within the meaning of *Terry v. Ohio,* Illinois statutes and case law.

■ The initial stop was a valid stop under the statute if the testimony of the officer is believed. The trial judge had the opportunity to observe the witness, determine his credibility and to determine the weight to be given the testimony of the witness. Obviously, the trial judge believed the officer. We find nothing in the record to support a finding that the trial court's determination was manifestly erroneous; thus, we must affirm the trial court's decision that the stop was valid.

■ The right to frisk does not automatically follow the right to stop. The Illinois Supreme Court has also articulated that the question of whether a stop is valid is a distinct and separate inquiry from whether the frisk is valid. (*Galvin,* 127 Ill. 2d at 163.) In *Terry* the United States Supreme Court stated:

"[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with

an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch', but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.

In order to determine whether the frisk in this case was valid, we must look to whether the police officer's belief that he was in danger when he noticed the belt on Smith's shoulder was a reasonable belief. If the belief was not reasonable, the frisk was invalid under Illinois case law; however, if the belief was reasonable, the frisk of Smith's outer clothing was valid.

Although this is admittedly a close case, we feel that the trial court's denial of the motion to suppress the weapon was justified by the officer's explanation that he made the frisk for his own protection. The officer testified that he saw a belt, the type normally worn around people's pants, around Smith's shoulder. The officer further testified that he felt it was necessary to frisk the defendant because he had information that Smith had been carrying a weapon. Nothing in the record suggests the police officer lied about his fear. Further, we find nothing in the record to suggest that the finding of the trial court was manifestly erroneous.

Accordingly, based on the above reasoning and the Illinois Supreme Court's decision in *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537, we affirm the trial court's decision.

Judgment affirmed.

McNULTY, P.J., and GORDON, J., concur.