THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDDIE PAYNE, Defendant-Appellant.

Fifth District   No. 5—91—0564

Opinion filed February 1, 1993.

Curtis L. Blood, of State Appellate Defender's Office, of Collinsville, for appellant.

Thomas J. Foster, State's Attorney, of Shawneetown (Norbert J. Goetten, Stephen E. Norris, and Philip B. Alfeld, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Following a bench trial, defendant, Eddie Payne, was convicted of unlawful possession of more than 30 grams but not more than 500

grams of a substance containing cannabis. (Ill. Rev. Stat. 1989, ch. 56½, par. 704(d).) Defendant was sentenced to two years' imprisonment and ordered to pay court costs in the amount of $258. On appeal, defendant raises three issues: (1) whether the trial court erred in denying defendant's motion to suppress evidence on the basis that the search warrant was supported by nothing more than a "bare bones" affidavit; (2) whether the State established a continuous chain of custody of the cannabis seized from defendant's home so as to demonstrate that the seized cannabis was the same substance which was submitted for chemical analysis; and (3) whether the State proved beyond a reasonable doubt an essential element of the offense charged— the amount of cannabis involved. For reasons which follow, we affirm.

On November 9, 1990, Equality Police Chief Chester Baker sought a warrant to search defendant's home for "any and all cannabis or marijuana and any and all drug paraphernalia." Attached as exhibit B to the complaint for search warrant was Chief Baker's sworn statement indicating that a reliable informant had told him that marijuana could be found at defendant's home.

The search warrant was issued and executed on November 9, 1990. The warrant was executed by Chief Baker and six other officers: Sheriff Glen McCabe, Deputy Raymond Martin, Shawneetown Police Chief Robert Patton, Ridgeway Chief of Police Michael Kitchens, Officer David Mills and Old Town police officer Billy Gene Taylor. Pursuant to the search, a large plastic container and two "ziplock" baggies containing a green, leafy substance were seized. Additionally, the officers found a set of scales, several "roaches" and a book on growing marijuana. Baker and Martin placed the seized items in the back of Martin's squad car, and Martin took the items to the courthouse in Shawneetown. Kitchens and Baker then arrested defendant at a local factory where he worked; defendant was charged with unlawful possession of cannabis.

On April 1, 1991, defendant filed a pretrial motion to quash the search warrant and suppress the evidence. The motion alleged the warrant was overbroad and did not state with particularity the person and/or place to be searched. Defendant further averred that Baker's affidavit did not set forth sufficient facts to establish probable cause for the issuance of a search warrant. Following an evidentiary hearing, defendant's motion to quash the warrant and suppress the evidence was denied. Trial commenced on June 10, 1991.

At trial, Officer Martin testified that he transported the confiscated material to the Shawneetown courthouse, where he met Sheriff McCabe. He and McCabe put the items in the evidence room at the

courthouse, and McCabe locked the door to that room. McCabe testified that at the time the material was placed in the evidence room, he was the only person who had a key to that room. The key was usually kept in his pocket on a key ring. McCabe testified that he kept the evidence room locked at all times. McCabe retired in December of 1990, and the key was turned over to Officer Martin as the incoming sheriff. The items were placed in the evidence room the same day the search warrant was executed—November 9, 1990. Baker testified that he placed on the two baggies and the plastic container evidence stickers reading "Eddie Payne, 11/9/90, Payne Residence" on November 13, 1990, four days after the search. He later testified that the stickers were placed on the containers on November 9, 1990. He admitted that he could not remember which date was the correct date but that no markings were placed on the baggies or container until he made them. Baker testified that on November 13, 1990, he and McCabe took the plastic container and one of the baggies to Sheriff McCabe's office. The officers took a small sample from the bag and the container, placed them in separate envelopes, marked each envelope, sealed them and sent the separate samples in one envelope via certified mail to Carbondale for testing.

Forensic scientist Fella Johnson was qualified as an expert in the area of drug chemistry. She testified that when she received the samples, they were still closed and sealed. She then placed her "personal markings," that is, case number C90—1617, on the packets, marked the samples as exhibits, dated them and placed her initials on them. Finally, she placed red evidence tape over the seals and put the samples in the laboratory vault. Within the next several days, Johnson removed the samples so they could be submitted to chemical analysis. Johnson testified that the seals had not been broken. Johnson performed a microscopic examination, a Duquenois-Levine test and a thin-layer chromotography test. Based on these tests, Johnson concluded that the samples of the green, leafy substance were cannabis. The sample taken from the baggie weighed .5 gram. The sample taken from the plastic container weighed .7 gram. Following the analyses, Johnson resealed the envelopes with red tape, placed her initials on the seal and returned the cannabis envelopes to the Equality police department. Officer Baker testified that the samples returned by the laboratory were in essentially the same condition as the day they were sent out, except upon return the envelopes were sealed with red evidence tape and had a writing on them with the notation "C901617."

In March 1991, Officers Baker and Martin removed the plastic container from the evidence room and took it to the Lorretta Pharmacy in Shawneetown so that the contents of the container could be weighed. Pharmacist Sharon Higginson agreed to weigh the material in the container. The plastic jar was too bulky to be placed on the scales, so Higginson suggested the contents be placed in separate bags. Officer Baker emptied the contents of the container into a cardboard box. He then scooped the contents into four separate bags. Higginson weighed each bag and orally announced the weight, and Baker wrote the weight on a sticker placed on each bag. Baker testified that the combined weight of the substance contained in the bags was 123.25 grams. The bags were then placed inside the plastic container which was returned to the evidence room. Baker identified the plastic container as the one seized in the search of defendant's home and stated that the material inside was in the same or substantially same condition as when found except that the leafy substance was now in plastic bags, rather than loose in the container. Officers Martin and McCabe testified to the same effect. Ms. Higginson testified that the bags and labels contained in the plastic jar looked like the bags and labels used when the substance was weighed at the pharmacy. However, she could not identify the bags with absolute certainty. The plastic container, with the four bags inside, was entered into evidence as People's exhibit No. 2. One of the seized baggies was admitted as People's exhibit No. 1, and the samples were admitted as People's exhibits Nos. 4 and 5.

Following closing arguments, the court found defendant guilty of unlawful possession of cannabis and sentenced him to two years' imprisonment. This appeal ensued.

Defendant first contends that the circuit court erred in denying his motion to suppress the evidence seized under the authority of the search warrant. Specifically, defendant contends the affidavit attached to the complaint for warrant did not set forth sufficient facts to establish probable cause for the issue of a warrant. Police officer Chester Baker's affidavit reads as follows:

"On November 9, 1990, Equality Police Officer Chester Baker spoke with a reliable informant who had given Officer Baker reliable information in the past regarding thefts and burglaries. On that date of November 9, 1990, reliable informant stated to Officer Baker that he (reliable informant) was, on November 9, 1990, inside a white frame house occupied by Eddie Payne and Eddie Payne's wife (wife's name unknown) and being the last house on the west end of Taswell Street, Equality, Gallatin

County, Illinois. Reliable informant stated he (reliable informant) was inside Eddie Payne's house on that date with Eddie Payne's permission and consent. Reliable informant further stated to Officer Baker that he (reliable informant) while inside Eddie Payne's house on November 9, 1990, saw a plastic bag containing what reliable informant believed to be marijuana. Reliable informant stated to Officer Baker that he (reliable informant) has seen marijuana in the past and has smoked marijuana in the past, and knows what marijuana looks like." Defendant contends Baker's statement is nothing more than a "bare bones" affidavit because it does not provide sufficient facts from which the trial judge could independently assess the informant's reliability and credibility. Absent such independent assessment, there was no probable cause to issue the warrant, and therefore, the marijuana should have been suppressed under the exclusionary rule. The State counters that defendant's argument is predicated on the two-pronged test established in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, which was abandoned in favor of the "totality of circumstances" test announced in *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317. The State urges that under *Gates*, the affidavit was sufficient to establish probable cause for the issuance of a search warrant and, therefore, the trial court properly denied defendant's motion to suppress the evidence. We agree.

■ Prior to *Gates*, the *Aguilar-Spinelli* test for assessing the sufficiency of a complaint for a search warrant based on an informant's tip was twofold: (1) whether the complaint presented sufficient facts to show how the informant obtained his information and (2) whether the complaint set forth the underlying circumstances by which the complainant could conclude that the information was reliable. (*Aguilar v. Texas* (1964), 378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514.) These requirements came to be known as the "two-pronged test," the first prong being the "basis of knowledge" prong and the second known as the "veracity" prong. Each prong of the test involved an independent and distinct evaluation by the issuing magistrate, and if an informant's tip satisfied only one of the two prongs, the tip could not be used to establish probable cause for issuance of a search warrant. (See *People v. Tisler* (1984), 103 Ill. 2d 226, 240, 469 N.E.2d 147, 154.) As our supreme court noted in *Tisler*, the two-pronged test was rejected in *Gates* because the lower courts had been too rigid in applying it. In its place, the United States Supreme

Court adopted the "totality of circumstances" analysis. *Gates* establishes the standard for assessing the application for a search warrant based on an informant's tip:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." (*Aguilar*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548, 103 S. Ct. at 2332.)

Probable cause for issuance of a search warrant exists if facts set forth in an affidavit would cause a reasonable person to believe that an offense has occurred and that evidence of that offense is in the place to be searched. (See *People v. Stewart* (1984), 104 Ill. 2d 463, 476, 473 N.E.2d 1227, 1232.) Probable cause is not to be a determination by a legal technician but instead by a reasonable and prudent person dealing with the practical considerations of everyday life. (*People v. Bohan* (1987), 158 Ill. App. 3d 811, 816-17, 511 N.E.2d 1384, 1388.) Although in any particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. (*People v. Stewart* (1984), 104 Ill. 2d 463, 477, 473 N.E.2d 1227, 1233.) A trial court's ruling on a motion to quash a warrant or suppress evidence should not be disturbed unless the ruling is manifestly erroneous. (*People v. Tisler* (1984), 103 Ill. 2d 226, 248, 469 N.E.2d 147, 158.) Finally, as *Gates* indicates, the issuing judge may draw reasonable inferences from the material supplied to him in the application for a search warrant. *Aguilar*, 462 U.S. at 240, 76 L. Ed. 2d at 549, 103 S. Ct. at 2333.

■ Applying these rules, we believe the facts stated in the instant affidavit provided a substantial basis to conclude that there was a "fair probability" that an illegal drug would be found in defendant's home. We first note that the informant's basis of knowledge was his personal observation that he saw marijuana in the defendant's home on the very day the warrant issued. This allegation in the complaint eliminated the possibility that the information was stale or obtained from another source. We also note that informant stated he was in defendant's home with defendant's permission and knew the sub-

stance was marijuana because he (the informant) had used marijuana before. The informant's admission to the past use of marijuana tends to support the allegation that the substance observed was the illegal drug. Informant described defendant's residence with particularity. The record indicates that, at the time the warrant was sought, the issuing judge was aware that affiant Baker knew defendant and knew where he lived. Furthermore, Baker averred that he had had previous contacts with the informant who had provided him with reliable information regarding past thefts and burglaries. "Reliable" means trustworthy or worthy of confidence (*Black's Law Dictionary* 1291 (6th ed. 1990)); thus, it can be inferred that informant had a good "track record" with the authorities. Defendant counters that any such inference would be misplaced as there is no indication that the informant's information regarding past thefts and burglaries resulted in arrests and/or convictions for those offenses. However, there is no requirement that an informant's credibility is established only when his previous information has resulted in arrests or convictions. (1. W. Lafave, *Search and Seizure*, §3.3(b), at 629 (2d ed. 1987).) An assertion that an informant has provided reliable information in the past may be sufficient under *Gates*. (See *Smith v. State* (Miss. 1987), 504 So. 2d 1194 (confidential and reliable source who in the past had furnished true and accurate information in the area of narcotics); *State v. Hendrickson* (Mont. 1985), 217 Mont. 1, 701 P.2d 1368 (confidential informant had on number of occasions provided affiant with information which proved reliable); *State v. Anderson* (Utah 1985), 701 P.2d 1099 (information received from previously reliable informant).) While it may have been preferable for the affiant to provide greater detail with respect to the thefts and burglaries, we do not believe this failure reduces Baker's statement to a "bare bones" affidavit. No single allegation listed in the affidavit would be sufficient to establish probable cause for the issuance of the warrant. But when the facts are considered together, they create a fair probability that marijuana would be discovered in defendant's residence. Finally, we note that the instant affidavit is similar to the affidavit upheld by our supreme court in *People v. McNeil* (1972), 52 Ill. 2d 409, 288 N.E.2d 464. In *McNeil*, the officer's affidavit stated that he had received information from a confidential informant who had furnished him with reliable information in the past. The informant told the officer that on that very day he had been at a certain address and had observed valuable furs which were the proceeds from a robbery which had occurred earlier that day; the furrier was named. The affidavit was the only evidence presented to the issuing judge. There was no corroboration that a rob-

bery had in fact occurred that morning. Our supreme court held that the affidavit was sufficient under the *Aguilar-Spinelli* test. As the affidavit in *McNeil* was upheld under the old two-pronged test, it would appear the instant affidavit is sufficient under the less rigorous standard of *Gates*. Accordingly, defendant's motion to quash the warrant and suppress the evidence was properly denied.

Defendant next claims error in the admission of the cannabis as evidence, alleging the State failed to establish a proper chain of custody. Specifically, defendant argues that the two baggies and plastic container seized from defendant's home were never properly marked, sealed or secured and, therefore, the evidence may have been tampered with, contaminated or altered. We disagree.

"Generally, real evidence is admissible when an adequate foundation is laid to establish that the item is the one involved in the alleged offense and is substantially unchanged since its seizure by authorities." (*People v. Terry* (1991), 211 Ill. App. 3d 968, 972-73, 570 N.E.2d 786, 788, citing *People v. Slaughter* (1986), 149 Ill. App. 3d 183, 500 N.E.2d 662.) "A proper foundation for the introduction of physical evidence may be laid either through witness identification or through establishment of the chain of custody." (*People v. Kabala* (1992), 225 Ill. App. 3d 301, 305, 587 N.E.2d 1210, 1212, citing *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.)

> "If an item cannot be readily identified or is susceptible to alteration by tampering or contamination, its chain of custody must be established with sufficient completeness to render it improbable that the item has been contaminated, exchanged, or subjected to tampering. [Citation.] The State is not required to exclude all possibility of tampering in order to establish a proper chain of custody but needs only to demonstrate that the exhibit has not been changed in any important respect [citation] and that it took reasonably protective measures since the substance was seized. [Citation.] Unless defendant produces actual evidence of tampering, substitution, or contamination, the State need only establish a probability that such did not occur, and any deficiencies go to the weight rather than the admissibility of the evidence. [Citation.] If one link in the chain is missing, but there is testimony describing the condition of the evidence when delivered which matches the description of the evidence when examined, the evidence is sufficient to establish a chain of custody." *People v. Pettis* (1989), 184 Ill. App. 3d 743, 753-54, 540 N.E.2d 1097, 1104.

Defendant maintains that two exhibits were never properly marked, sealed or safely secured, implying the evidence may have been tampered with or contaminated prior to trial. Exhibit 1, one of the baggies seized from the defendant's home, had only a zip-lock top. Exhibit 2, the plastic container, had a screw-on top. Neither exhibit was ever sealed. However, Officer Baker testified that he placed an evidence sticker on both exhibits indicating "Eddie Payne, 11-9-90, Payne Residence" on either the day of the search or four days later on November 13. Baker could not remember which date was correct but stated no markings were placed on the exhibits until the evidence stickers were attached. At trial, Baker testified that Exhibit 1 was in substantially the same condition as it was on the day it was seized from defendant's home except for the evidence sticker. Baker gave the same testimony with respect to the plastic container. He also noted that at the time of trial, the substance in the plastic jug was contained in plastic bags, rather than loose as it had been when confiscated from defendant's home. Both Baker and the pharmacist, Higginson, testified that the contents of the jug had been placed in four separate bags for purposes of weighing and then returned to the plastic jug. The exhibits were kept in the evidence room at all times prior to trial, except for removal to the sheriff's office where samples were taken. Sheriff McCabe testified that the evidence room was locked and he had the only key to that room; he usually kept the key on a ring in his pocket. When McCabe retired in December 1990, the key was turned over to the incoming sheriff, Officer Martin. Martin testified that he had the only key to the evidence room, which was kept in his possession at all times. Baker and McCabe testified that they took separate samples of each exhibit, marked them, sealed them and sent them via certified mail to a Carbondale lab for testing. Chemist Fella Johnson testified that she received the samples in untampered condition. The samples sent matched the samples received. Baker and McCabe's testimony matched the samples to the whole.

■ Based on the above, we find the State established a proper chain of custody for admission of the evidence at trial. While the baggie and the plastic jar may have been unmarked for several days and unsealed until the time of trial, defendant's suggestion that tampering, contamination or substitution may have occurred is mere speculation. While the protective measures taken by the State were less than ideal, any deficiencies in those measures went to the weight of the evidence rather than to its admissibility. See *Pettis*, 184 Ill. App. 3d at 753-54, 540 N.E.2d at 1104.

Defendant next contends the State failed to prove beyond a reasonable doubt that he possessed more than 30 grams of a substance containing cannabis. Defendant urges this court to reduce his conviction to possession of less than 2.5 grams of marijuana as the only expert testimony regarding the amount seized was 1.2 grams of marijuana.

Where there is a lesser-included offense for possessing a smaller amount, the weight of the substance containing a drug is an essential element of the charge of possession. (*People v. Hill* (1988), 169 Ill. App. 3d 901, 911, 524 N.E.2d 604, 611.) The weight of the substance containing the drug must therefore be proved beyond a reasonable doubt. (*Hill*, 169 Ill. App. 3d at 911, 524 N.E.2d at 611.) A chemist need not test every capsule or every gram of a substance in order to give an opinion as to the whole. *People v. Little* (1986), 140 Ill. App. 3d 682, 684, 489 N.E.2d 322, 323.

Here, defendant concedes that the samples tested by the chemist were cannabis in the amount of 1.2 grams. However, the chemist gave no opinion as to the whole. Defendant contends that as he was charged with possession of more than 30 grams of cannabis, then the expert must render an opinion to at least 30 grams, and to do so, the expert must have at least 30 grams to test. As 30 grams were not submitted to the lab for chemical analysis, defendant argues his conviction on the felony charge must fail and he should stand convicted of only the lesser misdemeanor offense of possession of less than 2.5 grams. (Ill. Rev. Stat. 1989, ch. 56½, par. 704(a).) Defendant argues that as the only evidence that he was in possession of more than 30 grams of cannabis was the nonexpert testimony of Officer Baker, it is insufficient to sustain his conviction. We disagree.

■ We first note that the cases cited by defendant are inapposite insofar as they involve situations where testing was performed on some packets of illegal substances but not others. When multiple bags or containers of suspected drugs are seized, a sample from each must be conclusively tested to prove that it contains a controlled substance. (*People v. Hill* (1988), 169 Ill. App. 3d 901, 911, 524 N.E.2d 604, 611.) If multiple containers are involved and only one container is submitted for analysis, the contents of the untested containers cannot be counted in determining the weight of the whole. (See *Hill*, 169 Ill. App. 3d at 911-12, 524 N.E.2d at 611.) This is not such a case. Here, the chemist separately analyzed the samples extracted from one "ziplock" baggie and from the plastic jar and concluded that the samples were cannabis in the amount of 1.2 grams. The samples were connected to the whole by the testimony of Baker and McCabe. Defend-

ant cites no authority holding that a sample submitted to a forensic scientist must consist of the minimum amount charged in the offense—in this case, 30 grams of a substance containing cannabis. Furthermore, it is well established that the weight of an illegal substance need not be proved by expert testimony. (See *People v. Jones* (1979), 75 Ill. App. 3d 214, 223, 393 N.E.2d 1132, 1139, *cert. denied* (1980), 445 U.S. 968, 64 L. Ed. 2d 246, 100 S. Ct. 1662.) The weight of the substance may be established by other testimony if the proper foundation is laid. (See *People v. Speed* (1982), 106 Ill. App. 3d 890, 896, 436 N.E.2d 712, 716.) The foundation regarding the weight of a substance is sufficiently proved if there is testimony verifying the accuracy of the scale used. (See *Speed*, 106 Ill. App. 3d at 896, 436 N.E.2d at 716.) Here, the pharmacist, Sharon Higginson, testified that the Tromener scale used was checked by a drug inspector and was accurate. She testified that she and Officer Baker weighed the evidence of the contents of the plastic jar. The contents were poured into a cardboard box and placed in four separate plastic bags to facilitate the weighing process. Higginson weighed each bag separately, and Baker recorded the weight of each bag. Higginson testified that the amount was indicated on a label "like we use for nursing home medication." When presented with the labeled bags at trial, Higginson testified that they looked like the bags used in the weighing and that the labels looked like those used at the pharmacy. However, she could not be 100% certain that the bags were the ones which she weighed because she did not place her initials on the labels. Baker testified that the combined weight of the contents of the bags was 123.25 grams. We believe Higginson's and Baker's testimony with regard to the weight of the substance constitutes proof beyond a reasonable doubt that defendant was in possession of more than 30 grams of a substance containing cannabis. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

GOLDENHERSH and LEWIS, JJ., concur.