THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHATO TAYLOR *et al.*, Defendants-Appellees.

Fourth District   No. 4—93—0288

Opinion filed November 30, 1993.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Richard Norris, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Anthony E. Novak, of Anthony Novak & Associates, of Urbana, for appellee Chato Taylor.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In September 1992, the State charged defendant Chato Taylor with possession with intent to deliver more than 10 grams but less than 30 grams of cannabis on school grounds (Ill. Rev. Stat. 1991, ch. 56½, par. 705.2(c)) and defendant Ricky Patterson with possession with intent to deliver more than 2.5 grams but less than 10 grams of cannabis on school grounds (Ill. Rev. Stat. 1991, ch. 56½, par. 705.2(d)). Both defendants filed motions to suppress, and in March 1993 the trial court heard and granted them. The State appeals, arguing that the trial court's assessment of the evidence was manifestly erroneous.

We agree and reverse.

I. BACKGROUND

On the morning of September 11, 1992, an Urbana High School teacher overheard students Lamont Powers and Rodney Smith discussing drug activity on school grounds. The teacher reported this conversation to school administrators, who directed school paraprofessional Gertrude Black to search Powers' locker. She found several individually wrapped packages of marijuana in the pocket of a pair of pants. She reported her findings to assistant principal Grace Ashenfelter, who then asked Black to bring Smith to the school office. Black retrieved Smith from his class, and as they walked to the office, Smith threw a cigarette package into the garbage, saying "I don't want people to know that I smoke." Later, Black recovered the package and discovered that it contained marijuana.

In the school office, Ashenfelter talked with Smith about drug activity in the school. She asked him about other students who had marijuana at school, and Smith stated that defendants also had marijuana.

At that point, Ashenfelter sent another administrator to bring defendants to the office, and she then searched both of their lockers. In defendant Patterson's locker, Ashenfelter found five individually wrapped packages of marijuana. Her search of defendant Taylor's locker did not reveal any drugs. However, another school administrator found marijuana in defendant Taylor's book bag after he arrived at the school office.

II. ANALYSIS

In making its finding, the trial court stated as follows:

"I find that the standard for a search is a reasonable and articulable suspicion as opposed to probable cause.

The question then comes down to whether based upon the one thing alone, namely what Rodney Smith stated to Mrs. Ashenfelter, was sufficient to form a basis for that reasonable and articulable suspicion under the law without more. ***

*The question becomes: Is what Rodney Smith told Mrs. Ashenfelter sufficient under the law to raise to the level to create a reasonable and articulable suspicion sufficient to permit the school officials to conduct a search?* *** [W]*ithout more, without any basis, without any further inquiry as to the basis of Smith's knowledge, the simple statement so-and-so and so-and-so in response to the question, 'Who might else be involved,' gives two names, period, I simply don't think that's enough for what took place here ***."* (Emphasis added.)

This court will not overturn a trial court's ruling on a motion to suppress unless it was manifestly erroneous. *(People v. Murray* (1990), 137 Ill. 2d 382, 387, 560 N.E.2d 309, 311; *People v. Smith* (1992), 224 Ill. App. 3d 511, 514, 586 N.E.2d 785, 787.) For the reasons that follow, we hold that the ruling before us was manifestly erroneous.

In making its findings, the trial court correctly set forth the applicable standard governing a search of a school locker or a student as reasonable suspicion. (See *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733.) However, it then considered the issue solely in terms of the sufficiency of Smith's statement to Ashenfelter. In essence, the court found that without any inquiry as to the basis of Smith's knowledge, his statement to the school authorities could not amount to reasonable suspicion permitting these searches. In doing so, the trial court failed to consider the other evidence of drugs on the school grounds that day.

By solely analyzing the underlying basis for Smith's statement, the trial court analyzed the issue as if employing the *Aguilar-Spinelli* paradigm for determining probable cause. (See *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 728-29, 84 S. Ct. 1509, 1514; *Spinelli v. United States* (1969), 393 U.S. 410, 416, 21 L. Ed. 2d 637, 643-44, 89 S. Ct. 584, 589.) The *Aguilar-Spinelli* test for assessing the sufficiency of an informant's tip was twofold: whether sufficient facts existed to show (1) how the informant obtained his information, and (2) that the informant was reliable. *(People v. Payne* (1993), 239 Ill. App. 3d 698, 703, 607 N.E.2d 375, 379.) Each prong of this test required an independent evaluation, and if the evidence

failed to satisfy both prongs, it was insufficient to establish probable cause. *Payne*, 239 Ill. App. 3d at 703, 607 N.E.2d at 379.

■ Noting the rigidity of the two-prong test, the Supreme Court in *Illinois v. Gates* (1983), 462 U.S. 213, 230-31, 76 L. Ed. 2d 527, 543-44, 103 S. Ct. 2317, 2328, rejected it in favor of the less rigorous "totality of the circumstances" analysis to establish probable cause. (*Payne*, 239 Ill. App. 3d at 704-05, 607 N.E.2d at 379-80.) Under *Gates*, probable cause to search exists if, considering the totality of the circumstances, a reasonable person would believe that an offense has occurred and that evidence of the offense is in the place to be searched. (*Payne*, 239 Ill. App. 3d at 704, 607 N.E.2d at 379.) No requirement exists under *Gates* that an informant's credibility be independently established by his having previously provided verified information. See *Payne*, 239 Ill. App. 3d at 705, 607 N.E.2d at 380.

The trial court found that Smith's statement, without evidence of its veracity or credibility, constituted insufficient grounds for the school to conduct its searches. Under the *Gates* totality of the circumstances analysis, however, the past reliability of an informant's tip need not be established as a condition precedent to justify a search.

We also note that *Gates* concerned the State's burden to show probable cause justifying a search, a standard placing a heavier burden on the State than the reasonable suspicion test that applies here. Thus, in view of the Supreme Court's eliminating the rigid *Aguilar-Spinelli* analysis from probable cause evaluations, we hold that it has no place with regard to evaluating the lesser standard of reasonable suspicion. By focusing on the reliability of Smith's information, the trial court erred by not considering whether the totality of the circumstances provided a reasonable suspicion that defendants possessed drugs on school grounds.

The reasonable suspicion standard first emerged in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. The *Terry* exception to the probable cause requirement has been codified in section 107—14 of the Code of Criminal Procedure of 1963, which provides that a police officer may stop a person in a public place without probable cause to make an arrest "when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense." (Ill. Rev. Stat. 1991, ch. 38, par. 107—14; see also *People v. Scott* (1992), 148 Ill. 2d 479, 503, 594 N.E.2d 217, 225.) In order to justify the stop, the police officer must identify specific articulable facts which, when taken with their natural inferences, make the intrusion reasonable. (*Scott*, 148 Ill. 2d at 503, 594 N.E.2d at 225.) These facts need not rise to the level of probable

cause, but they must justify more than a mere hunch. *Scott*, 148 Ill. 2d at 503, 594 N.E.2d at 225; see *T.L.O.*, 469 U.S. at 342-43, 83 L. Ed. 2d at 734-35, 105 S. Ct. at 742-43.

In *T.L.O.*, the Supreme Court discussed the reasonable suspicion required to justify a school official's search of a student. In its analysis, the Court relied upon *Terry*. However, while utilizing *Terry*'s logic, the Court never explicitly stated how much or what type of suspicion is needed to make the invasion of the students' privacy interests reasonable. We hold that the reasonable suspicion required for school officials to search a student is identical to the reasonable suspicion set forth under *Terry*.

■ However, an important distinction exists between a *Terry* situation and a school official's search under *T.L.O.* Under *Terry*, the search may only extend to a limited pat-down for weapons. (*Smith*, 224 Ill. App. 3d at 515, 586 N.E.2d at 829-30; see Ill. Rev. Stat. 1991, ch. 38, par. 108—1.01.) The scope of that search is thus severely limited. On the other hand, a school official acting under *T.L.O.* may conduct as thorough a search as required by the circumstances. Thus, although *Terry* provides guidance for establishing the requisite reasonable suspicion to justify the school's search, *Terry*'s limitations do not thereafter apply to the scope of the search.

We note that no magic ingredients establish reasonable suspicion—or, for that matter, probable cause. These concepts are fluid, "turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." (*Gates*, 462 U.S. at 232, 76 L. Ed. 2d at 544, 103 S. Ct. at 2329.) Thus, although we cannot define a particular quantum of evidence necessary to establish reasonable suspicion under a totality of the circumstances analysis, we can say that whatever that quantum of evidence may be, it is less than the quantum of evidence necessary to establish probable cause.

■ The school authorities here had four significant, independent pieces of information upon which to conclude reasonable suspicion existed to search defendants and their lockers: (1) Smith's statements implicating defendants, (2) the conversation overheard by the teacher earlier that same day, independently indicating that drugs were on school premises, (3) the marijuana found in Powers' locker, and (4) the marijuana found in the cigarette package Smith threw in the garbage can. The latter two pieces of information rebutted any notion that the students' conversation was nothing more than "trash talk," consisting merely of adolescent exaggeration. When we consider this information under the totality of the circumstances test mandated by *Gates*

and in accordance with the standards provided by *T.L.O.*, we hold that it was clearly sufficient to constitute reasonable suspicion to authorize the searches that occurred here. We further hold that the trial court's conclusion to the contrary was manifestly erroneous.

III. CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court of Champaign County and remand for further proceedings.

Reversed and remanded.

COOK and LUND, JJ., concur.