723 A.2d 523

**In re PATRICK Y.**

**No. 523, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 28, 1999.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief) Baltimore, for Appellant.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Robert Dean, State's Atty. for Montgomery County, Rockville, on the brief), for Appellee.

Submitted before JOSEPH F. MURPHY, Jr., C.J., and EYLER, and ROBERT C. MURPHY (Ret., specially assigned), JJ.

ROBERT C. MURPHY, Judge, Retired, Specially Assigned.

Patrick Y., the appellant, was charged with being a delinquent child by virtue of committing acts which, if committed by an adult, would constitute possession of a deadly weapon upon school property and possession of a pager on school property. An adjudicatory hearing was held in the District Court of Montgomery County acting as a Juvenile Court (Eric Johnson, J.). At that hearing, appellant moved to suppress physical evidence and statements that he alleged were obtained in violation of the Fourth Amendment of the United States Constitution. Judge Johnson, after hearing evidence on appellant's motion, denied it. He subsequently found appellant to have committed both offenses and found him guilty of being a delinquent child. Appellant presents us with one question in this appeal: Did the juvenile court err in denying his motion to suppress?

Perceiving no error, we affirm the judgment of the juvenile court.

## FACTS[1]

■ At approximately 10:40 on the morning of May 23, 1997, Patrick Rooney, a school security guard, received information "that there were drugs and or weapons in the middle school area of the [Mark Twain] school." Officer Rooney did not recall the source of the information. Officer Rooney alerted the principal of the school, who authorized a search of every locker in the middle school area, including those of teachers. On the date in question, appellant was an eighth grade student in the middle school. His locker was searched pursuant to the principal's authorization. When Officer Rooney searched appellant's locker, he found a folding knife and a packet of rolling papers in appellant's backpack.[2]

Officer Rooney went to find appellant and found him being restrained by school personnel, apparently as a result of an unrelated incident. School personnel called the police regarding the items found in appellant's locker. Officer Rooney waited with appellant for the police to arrive. Officer Rooney did not remember if anyone else was present with them. According to Officer Rooney, he did not question appellant while waiting for the police.

Although appellant did not remember whether anyone had specifically asked him about the items, he recalled that he had admitted that the knife, rolling papers, and pager were his. Appellant also introduced into evidence a school policy statement that he and his mother had signed. The statement, titled "Policies Regarding Student Behavior," set forth the

---

1. During the adjudicatory hearing on the charges, appellant moved to suppress the physical evidence. Consequently, a portion of that hearing served as a hearing on the motion. In reviewing the lower court's denial of the motion to suppress, we consider only the record of the portion of the hearing which concerned the motion. *Trusty v. State,* 308 Md. 658, 521 A.2d 749 (1987); *Aiken v. State,* 101 Md.App. 557, 647 A.2d 1229 (1994), *cert. denied,* 337 Md. 89, 651 A.2d 854 (1995). We have, therefore, related only those facts presented as part of the motion hearing.

2. Appellant was also charged with possessing a pager. The pager was apparently taken from appellant after the other items had been found in his backpack.

school's behavior management policy, its policy on physical restraint of students, and a prohibition against students bringing more than $10.00 to school. In addition, the statement provided:

> Mark Twain subscribes to the Montgomery County Public Schools' Search and Seizure policy, which provides that the principal or the administration's designee may conduct a search of a student or of the student's locker if there is probable cause to believe that the student has in his/her possession an item, the possession of which constitutes a criminal offense under the laws of the State of Maryland.

At the adjudicatory hearing, appellant moved to suppress the physical evidence found in his locker. He contended that the school's policy statement created an expectation that school officials would not enter his locker absent probable cause and that the search of appellant's locker was unreasonable because it was not based on probable cause.[3]

In this appeal appellant contends that the search was unreasonable because the school authorities had no reasonable suspicion that appellant possessed contraband in his locker and because it was in violation of the school's stated policy on searches. The State counters that the trial court properly balanced the intrusion into appellant's privacy interests against the school's interest in maintaining a safe environment, and that he acted properly in denying appellant's motion to suppress.

## DISCUSSION

As noted, in reviewing the denial of a motion to suppress, we consider only the record of the hearing on the motion to suppress, not that of the trial itself. *Trusty v. State,* 308 Md. 658, 521 A.2d 749 (1987); *Aiken v. State,* 101 Md.App. 557, 647 A.2d 1229 (1994), *cert. denied,* 337 Md. 89, 651 A.2d 854 (1995).

---

3. Appellant also contended at the hearing that the statements he made while waiting for the police should be excluded because he had not been read his *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He does not repeat that contention in this appeal.

We review the evidence in the light most favorable to the prevailing party. *McMillian v. State*, 325 Md. 272, 600 A.2d 430 (1992); *Riddick v. State*, 319 Md. 180, 571 A.2d 1239 (1990). While we accept the findings of disputed fact unless clearly erroneous, after having given due regard to the lower court's opportunity to assess the credibility of witnesses, we make our own constitutional appraisal as to the effect of those facts. *McMillian v. State, supra, Riddick v. State, supra.*

 ▮▮▮ The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The purpose of this Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *New Jersey v. T.L.O.*, 469 U.S. 325, 335, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). The prohibition against unreasonable searches applies to searches conducted upon schoolchildren by school officials. *New Jersey v. T.L.O.*, 469 U.S. at 333, 105 S.Ct. 733. The Supreme Court noted, however, that,

> [a]lthough the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends upon the context within which a search takes place. The determination of the standard of reasonableness governing any specific class of searches requires "balancing the need to search against the invasion which the search entails." On one side of the balance are arrayed the individual's legitimate expectation of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of public order.

*Id.* at 337, 105 S.Ct. 733 (citation omitted).

The Court recognized that "schoolchildren may find it necessary to carry with them a variety of legitimate, noncontraband items, and there is no reason to conclude that they have

necessarily waived all rights to privacy in such items merely by bringing them onto school grounds." *Id.* at 339, 105 S.Ct. 733. The Court opined, however, that the need of the schools to maintain order and a proper educational environment "requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." *Id.* at 339, 105 S.Ct. 733. Recognizing "the substantial need of teachers and administrators for freedom to maintain order in the schools," *id.* at 341, 105 S.Ct. 733, the Court stated that school officials need not obtain a warrant before searching a student who is under their authority. *Id.* at 340, 105 S.Ct. 733. The Court also concluded that, balancing the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools, school officials did not need probable cause in order to search a student. *Id.* at 341, 105 S.Ct. 733. Rather, the legality of such a search "should depend simply on the reasonableness, under all the circumstances, of the search." *Id.* at 341, 105 S.Ct. 733. The Court further explained:

Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception"; second, one must determine "whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 341–42, 105 S.Ct. 733 (citations and footnotes omitted).

Although *New Jersey v. T.L.O.* involved a search based on individualized suspicion, the Court recognized that such suspi-

cion is not a necessary prerequisite to a search being reasonable. *Id.* at 342, n. 8, 105 S.Ct. 733. Other cases have made clear that "where a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665–66, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). Thus, in *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the United States Supreme Court upheld drug testing without particularized suspicion for railway employees involved in accidents and those who violated particular rules. In *National Treasury Employees Union v. Von Raab, supra,* the Court upheld drug tests as a condition of promotion or transfer of members of the custom service who are involved in drug interdiction and carry firearms. Noting the "almost unique mission" of the Customs Service, *Von Raab,* 489 U.S. at 674, 109 S.Ct. 1384, the court reasoned that the government had a "compelling" interest in assuring that individuals in those positions were not drug users. *Id.* at 670–71, 109 S.Ct. 1384.

In *Vernonia School District 47J v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), the United States Supreme Court addressed the reasonableness of a generalized search without individualized suspicion in the context of a public school. In that case, the Court considered whether the school district's concern about drug use by student athletes was sufficient to justify a policy whereby all students participating in interscholastic athletics were required to consent to urinalyses for drug testing.

The Court stated that Fourth Amendment rights "are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodian and tutelary responsibility for children." *Id.* at 656, 115 S.Ct. 2386. It noted that "students within the school environment have a lesser expectation of privacy than members of the population

generally." *Id.* at 657, 115 S.Ct. 2386 (quoting *New Jersey v. T.L.O.*, 469 U.S. at 348, 105 S.Ct. 733 (Powell, J., concurring)).

The Court also opined that student athletes have a lower expectation of privacy than other students. It concluded that the intrusion imposed by the urinalysis requirement into the student's privacy interest was "not significant." *Acton,* 515 U.S. at 660, 115 S.Ct. 2386.

The Court then weighed, against that intrusion, the nature and immediacy of the governmental concern. The Court explained that, in the absence of individualized suspicion, the governmental concern must be "important enough to justify the particular search at hand, in light of other factors which show the search to be relatively intrusive upon a genuine expectation of privacy." *Acton,* 515 U.S. at 661, 115 S.Ct. 2386. The Court stated that the administrator's concern with deterring drug use by our nation's schoolchildren was an important, "indeed, perhaps compelling," concern. *Id.* at 662, 115 S.Ct. 2386. The Court also noted that the "necessity for the State to act is magnified by the fact that this evil is being visited not just upon individuals at large, but upon children for whom it has undertaken a special responsibility of care and direction." *Id.* at 662, 115 S.Ct. 2386. The Court explained:

> ... when the government acts as guardian and tutor the relevant question is whether the search is one that a reasonable guardian and tutor might undertake.

*Id.* at 665, 115 S.Ct. 2386.

Balancing the factors involved in that case, the Court concluded that the drug testing policy was reasonable.

Other courts which have balanced the privacy interests of a student with a school's need to maintain a safe and proper educational environment have held that generalized searches of student's effects were reasonable under the circumstances. For example, in *In the Interest of F.B.*, 442 Pa.Super. 216, 658 A.2d 1378 (1995), the Pennsylvania Superior Court held that a routine search in which all students were scanned by metal detectors as they entered the school was reasonable. The court opined that the uniformity of the procedures followed by

each officer protected the students from the discretion of the individual performing the search. 442 Pa.Super. at 224, 658 A.2d at 1382. It concluded that the school's interest in ensuring the safety of its students outweighed the students' privacy interest.

The Eighth Circuit Court of Appeals reached the same conclusion in *Thompson v. Carthage School District,* 87 F.3d 979 (1996), a § 1983[4] action against school officials who had conducted a generalized search for weapons at the school. In that case, the Court of Appeals reversed a lower court determination that the search had been unreasonable. The Court stated that the principal's suspicion that one or more weapons had been brought to school that morning, based on information from two separate sources, created a "risk to student safety and school discipline [ ] that no 'reasonable guardian and tutor' could ignore." *Id.* at 983.

*See also Todd v. Rush County Schools,* 133 F.3d 984 (7th.Cir.), *rehearing denied,* 139 F.3d 571 (7th.Cir), *cert. denied,* ⸺ U.S. ⸺, 119 S.Ct. 68, 142 L.Ed.2d 53 (1998), upholding suspicionless drug testing for all students participating in extracurricular activities. *But see, Trinidad School District No. 1 v. Lopez,* 963 P.2d 1095 (Colo.1998), holding that suspicionless drug testing of students who participated in the marching band was unreasonable under the Fourth Amendment.

 Balancing the appellant's privacy interest in this case with the need of the school to maintain order and a proper educational environment, we conclude that the search of appellant's locker was reasonable. In general, courts that have considered whether students have a legitimate expectation of privacy in their lockers have concluded that they do. *See, e.g., People v. Taylor,* 253 Ill.App.3d 768, 192 Ill.Dec. 630, 625 N.E.2d 785 (1993); *Commonwealth v. Snyder,* 413 Mass. 521, 597 N.E.2d 1363 (1992); *State v. Michael G.,* 106 N.M. 644, 748 P.2d 17, *cert. denied,* 106 N.M. 627, 747 P.2d 922

---

4. See 42 U.S.C.A. § 1983.

(1987); *State v. Joseph T.*, 175 W.Va. 598, 336 S.E.2d 728 (1985).[5] We agree that such an expectation of privacy exists. That privacy interest, however, is limited by the needs of school officials to maintain safety and discipline in the school. Furthermore, a locker search is not an intrusion on one's person and, given the lesser expectation of privacy enjoyed by a student, such a search is not seriously intrusive. *See Commonwealth v. Snyder, supra; In re Joseph G.*, 32 Cal. App.4th 1735, 38 Cal.Rptr.2d 902 (1995).

On the other hand, the school's interest in maintaining the security of all students at the school is great. As the Maryland Court of Special Appeals stated in *In re Devon T.*, 85 Md.App. 674, 701, 584 A.2d 1287 (1991):

> ... the mixed mission of the school authority is to protect not only the constitutional rights of the student who may be a drug pusher but equally, perhaps more importantly, to protect the health and welfare of the entire school community from the ravages of that drug pusher. The parents of those other students, entrusting their children to the public charge, are entitled to expect nothing less.

Needless to say, the schools' mission to protect the safety of their students against those who bring weapons to school is also important. *See Quince v. State*, 319 Md. 430, 435, 572 A.2d 1086 (1990) ("The need for urgent action was apparent. A report of a man with a gun in any public place is a serious matter."). We conclude, therefore, that the principal of appellant's school, when faced with a report of drugs or a weapon, was justified in ordering a search of all lockers in the middle school area.

Appellant argues that the report of a weapon or drugs in school could have been merely a rumor. Because Officer Rooney did not recall his source, it is not clear whether the report was made by someone with first hand knowledge. We

---

**5.** We note, however, that the United States Supreme Court specifically declined in the *T.L.O.* case to express its opinion as to whether a student has an expectation of privacy in his locker. *See New Jersey v. T.L.O.*, 469 U.S. at 337, n. 5, 105 S.Ct. 733.

believe, however, that the nature of the source is not controlling. Other courts have held that even anonymous reports, in a school setting, provide sufficient justification for a search. *See, e.g., State v. McKinnon,* 88 Wash.2d 75, 558 P.2d 781 (1977); *State in Interest of G.C.,* 121 N.J.Super. 108, 296 A.2d 102 (1972). Further, while the reliability of an informant is a factor in determining whether the probable cause exists in a given situation, *see Lee v. State,* 311 Md. 642, 653, 537 A.2d 235 (1988), we are not concerned here with a probable cause requirement. The search was not conducted in order to determine whether any student was involved in illegal activity. Rather, the search was undertaken to protect the welfare and safety of the students at the school. The report, even on an anonymous basis, created a risk "which no reasonable guardian or tutor" could ignore.

We are not persuaded by *Burnham v. West,* 681 F.Supp. 1160 (E.D.Va.1987)m and *Jones v. Latexo Independent School District,* 499 F.Supp. 223 (E.D.Tex.1980), cited by appellant, that the search conducted in the present case was unreasonable. Both cases cited by appellant preceded *Acton. Burnham* involved different factors than are present here, and involved a search of pockets and pocketbooks as well as bookbags. *Jones,* which involved a canine search, not only preceded *Acton,* but also preceded the United States Supreme Court's decision in *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), in which the Court held that the exposure of luggage to a dog trained in narcotics detection did not constitute a search.

■ Appellant also contends that the fact that the search violated the school's policy statement rendered the search unreasonable. We do not read the school policy statement as prohibiting searches except where there is probable cause to believe that there is contraband inside, regardless of the reason for the search. The statement, read as whole, explains the consequences of students' actions. It does not purport to be a complete statement of disciplinary policy, nor does it

purport to be a limitation on the school administrators' need to maintain safety and order in the school.

Even if the policy statement acknowledged an expectation of privacy in a student's locker, that would not change the result here. We agree that students have an expectation of privacy in their lockers. We have concluded, nonetheless, that under the circumstances of the present case, the school administration's need to protect the safety and well-being of the other students at the school outweighed appellant's privacy interest.

The search of all the lockers, including the teachers', the other students', and appellant's, was reasonable. The trial court did not err in denying appellant's motion to suppress.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**