(No. 44523

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ENRIQUE (RICHARD) ZUNIGA, Appellee.

*Opinion filed Jan. 26, 1973.—Rehearing denied March 27, 1973.*

WARD, J., took no part.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE, ARTHUR L. BELKIND and NICHOLAS DeJOHN, Assistant State's Attorneys, of counsel), for the People.

THOMAS J. MALONEY and RICHARD H. DEVINE, both of Chicago, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Richard Zuniga, in separate jury trials in the circuit court of Cook County, was convicted of the crimes of attempt to murder and murder. He was sentenced to from 5 to 15 years for attempt to murder and from 40 to 75 years for murder. On appeal, the appellate court reversed both convictions and this court granted the State's petition for leave to appeal. 133 Ill. App. 2d 442, 273 N.E.2d 258.

The defendant had been charged with having murdered one man by shooting him and attempting to murder

another by shooting at him during a fight which occurred outside a tavern in the early morning of October 17, 1966.

It was the appellate court's position that the defendant had to be tried for both offenses within 120 days following the date that he had been taken into custody; that delay in the proceedings had not been occasioned by the defendant; that the defendant had not been tried within 120 days from the time he had been taken into custody and should therefore be discharged under the provisions of section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, ch. 38, par. 103—5), which provides:

> "(a) Every person in custody in this state for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken in custody unless delay is occasioned by the defendant, by a competency hearing, or by an interlocutory appeal."

The defendant was arrested on October 17, 1966. On October 21, in separate indictments, he was indicted for attempt to murder and murder. He was arraigned on October 28, at which time his cases were assigned to a trial judge who continued them to November 28. The defendant was not released on bail. On November 7, he made a motion to have his cases advanced from November 28 to November 7, which was allowed. On that date he filed a petition for substitution of judges which was also allowed. On the same day the presiding judge reassigned the cases to another judge for trial who continued them to January 3, 1967. By virtue of three more continuances the cases were continued to February 24, on which date the State filed a petition for an extension of time of 60 days for the purpose of securing the presence of a witness whom it claimed was unavailable. Instead of allowing the full 60 days' extension of time as authorized by section 103—5(c), the court granted an extension of time to April 12.

On April 10, 1967, the cases were called and the State made a motion to consolidate both indictments for trial. The defendant objected to the allowance of the motion

and it was denied. The defendant's motion to be discharged because he had not been brought to trial within 120 days was also denied. The State elected to try the indictment charging attempt to murder first and on April 10 proceeded with the trial of that case, which resulted in a verdict of guilty on April 20. None of the continuances had been granted on the motion of the defendant. The murder case was reassigned to another judge and continued to April 27, on which date the court denied the defendant's motion to dismiss the murder indictment because he had not been brought to trial within 120 days.

The appellate court held that the statutory period commenced to run on October 17, 1966, the day the defendant was originally taken into custody. If this is the proper date from which to compute the time, more than the 120-day statutory period had run on February 24 when the court allowed the State's motion to extend the period to secure a witness and the defendant should be discharged. However, a delay occasioned by the accused is a waiver of the right to be tried within the statutory period, and the statute will not apply to discharge the accused until a new 120-day period has elapsed. (*People v. Hairston, 46 Ill.2d 348; People v. Kuczynski, 33 Ill.2d 412.*) This court has held that a motion for a substitution of judges constitutes a delay occasioned by the accused which will interrupt the running of the statutory period. *People v. Iasello, 410 Ill. 252; People v. Rankins, 18 Ill.2d 260.*

The defendant contends and the appellate court found that the defendant's motion for a substitution of judges did not cause a delay which would interrupt the running of the statutory period because the defendant's cases had been continued to November 28 by the original judge to whom they had been assigned. The defendant had moved to have his cases advanced to November 7, at which time he presented his petition for substitution of judges. Of course, the reason the defendant requested that his cases be

advanced to November 7 was for the purpose of presenting that motion. Section 114—5 (Ill. Rev. Stat. 1965, ch. 38, par. 114—5) requires that the motion for substitution of judges be made within 10 days after the cause has been placed on the trial call of a judge, and November 7 was the 10th day that the defendant's cases had been on the original judge's trial call. In any event, the cases lost whatever seniority status they had acquired on this judge's calendar and had to be returned to the presiding judge for reassignment to another trial judge. The defendant's cases then assumed their position on that judge's calendar, presumably at the bottom of the list of pending cases. Without knowing the exact condition of each judge's calendar and length of time required to dispose of each case thereon it is impossible to state whether the motion for a substitution of judges actually delayed bringing the defendant's cases to trial or advanced them as the appellate court found. We do know that the motion and reassignment started anew the administrative procedure of bringing the defendant's cases to trial. The mere fact that the defendant had his cases advanced from November 28 to November 7 for the purpose of presenting his motion does not distinguish this case from our holdings in *People v. Iasello* and *People v. Rankins.* We hold that the proper date from which the 120-day period is to be computed is November 7, the date of the motion for substitution of judges. Using this date, the trial judge, on February 24 (within 120-day period), properly extended the trial date to April 12 to permit the State to procure a witness. The trial on the charge of attempt to murder commenced on April 10, and the defendant was not entitled to be discharged.

Although the defendant has taken a different position in the appellate court and in this court, in the trial court his counsel agreed that November 7 was the proper date from which to compute the 120-day period. His motion for discharge in that court was based on his contention

that the trial judge had erroneously entered an order on February 24 which he contended was not to take effect until March 10 and was thus not effective to extend the trial date to April 12.

The appellate court concluded that prior to the 1967 amendment to section 103—5(e) it was incumbent upon the State to bring the defendant to trial on both the attempt to murder charge and the murder charge within 120 days from the time he was taken into custody. It held that section 103—5(e), as it existed in 1965, did not allow the prosecution a reasonable time after the conclusion of the trial on the first charge within which to try the defendant on the second charge. The opinion of the appellate court was filed prior to our opinion in *People v. Olbrot, 49 Ill.2d 216,* wherein we stated at page 219, "It is clear that if the first trial *** had resulted in a guilty verdict rather than a mistrial, section 103—5(e) would have provided an additional 120 days from the date of defendant's incarceration for that offense in which to try the four other pending indictments." *Olbrot* considered section 103—5(e) before the 1967 amendment. This is the same section applicable to this case (Ill. Rev. Stat. 1965, ch. 38, par. 103—5(e); it provides in part: "While any person is incarcerated in this state on sentence for any offense, if there is pending against him in the same county in which he was convicted one or more additional charges of another offense he shall be tried on such charge or charges within 120 days from the date of his incarceration or such untried causes shall be barred ***." Following *Olbrot* we hold that the State had 120 days following the verdict in the attempt to murder trial within which to bring the defendant to trial on the murder charge.

The verdict on the attempt to murder charge was returned on April 20, 1967. On April 27, on motion of the defendant, the murder case was continued to May 8, and on May 8, again on motion of the defendant, the case was continued to May 22. By virtue of several additional

continuances by the court, and on motion of the prosecutor, the case was continued to September 18 (within 120 days from May 22, the last date to which the case had been continued on motion of the defendant). On September 18, again on motion of the defendant, the case was continued to September 25, on which date the trial of the murder indictment began. After each continuance granted on motion of the defendant the statute started to run anew from the date to which the cause had been continued. (*People v. Hairston, 46 Ill.2d 348.*) At no time following the verdict in the attempt to murder case on April 20 did a 120-day period run between continuances granted to the defendant.

Defendant argues that the trial court erred in allowing a witness for the People in the trial for attempt to murder to state that he was under the protection of the State's Attorney's office. Evaristo Noriega was the first witness called by the prosecution. This witness had gone to Mexico after the occurence which led to the indictments. It was his absence which caused the State to petition for an extension of time within which to try the defendants. The court, for the purpose of determining if an interpreter should be used, questioned the witness as follows:

"Q. Will you state for the record your name? Do you understand English?
A. A little.
Q. Will you tell me your name?
A. Evaristo Noriega.

\* \* \*

Q. Noriega, where do you live?
A. I can't say—
Q. No, talk to me, Sir. If you can't say it, tell me "I do not know how to say it in English."
A. I do not know how to say it in English.

The Court: You may proceed with the interpreter."

The Assistant State's Attorney then interrogated through the interpreter.

"Q. State your name please.

A. Evaristo Noriega.
Q. What is your address, sir?
A. I am now living under the protection of the State's Attorney's office."

The defendant moved for a mistrial, claiming that the answer of the witness was prejudicial to the defense, leaving the jury with the inference that the witness needs protection. The court overruled the objection and upon returning to the courtroom admonished the jury that the name and address of a witness are identifying information only and no inferences are to be drawn from where the witness is now staying. During cross-examination the witness was questioned concerning previous statements which he had made. The defense elicited information from the witness that he had returned from Mexico on April 6 before the trial commenced on April 10 and had talked to the assistant State's Attorney on the date that he had returned. He stated that the day before he testified he was given two statements which he had previously made to read over. Defense counsel, questioning through the interpreter, then asked:

"Q. Where was he at when he read them?
A. Here in this building—next door.
Q. Was he given those statements to take with him to his living quarters?
A. I saw them up there, yes.

*    *    *

Q. Did he have the statements with him overnight?
A. Yes.
Q. Where are those statements now?
A. They are upstairs yet.
Q. Are they up in your living quarters?
A. Yes."

When the witness stated he was in protective custody, he was answering a question propounded through an interpreter which he had been previously asked directly by the court. The answer was not responsive to the question and the court properly admonished the jury. We do not think that the defendant is now in a position to complain

about the statement of the witness. After the court had admonished the jury that no inferences are to be drawn from this information, the defendant on cross-examination re-opened this subject, as shown by the interrogation quoted above. Also, we find that it was not error for the prosecutor to refer to the protective custody of this witness in his closing argument. His statement was a reply to and invited by comments which the defense counsel had previously made in his argument to the jury. *People v. Anderson, 48 Ill.2d 448; People v. Hayes, 23 Ill.2d 527.*

The defendant also argues that in the trial for attempt to murder the trial court erred in allowing a prior statement of Carlos Lopez, who was called as the court's witness, to be read to the jury for purposes of impeachment. We disagree. Lopez was called as the court's witness and was granted immunity from prosecution. During a lengthy conference in chambers, the procedure to be used in the interrogation of this witness was discussed, and finally the court agreed to follow the procedure suggested by the defense for questioning this witness, including the use of his prior statement. In complying with this arrangement the court questioned Lopez generally, after which the State was permitted to cross-examine. During the cross-examination the State used the statement which Lopez had previously given to the police to show that he had made a prior inconsistent statement. The defense did not make an objection to this use of the witness's prior statement. We conclude that the defendant has waived any right to now complain of the procedure followed.

Finally, the defendant contends that in the trial for murder he was not proved guilty beyond a reasonable doubt. No one testified that he saw defendant fire the shot which killed the deceased, Sanchez. We find, however, that there is adequate circumstantial evidence in the record to support the verdict. There is evidence which reflects that several people were in the tavern. Lopez fired a shot in the air. Noriega reprimanded him for doing so and the

two started to scuffle. Noriega then invited Lopez outside to fight but told him to give the gun to someone else. Lopez gave the gun to the defendant, Zuniga. Noriega and Lopez then went outside and the fight started. The deceased, Sanchez, and his nephew and several others left the tavern to watch the fight. Sanchez and his nephew were standing about three feet behind the defendant, who was urging Lopez to hit Noriega. No one else was in front of Sanchez and his nephew, but there were others behind them. Sanchez wanted to stop the fight. A shot was fired and Sanchez fell. The coroner's pathologist testified that the bullet entered the left side of the deceased's face and had been fired from close range. Following the shot the defendant, Zuniga, ran to Noriega, who was on the ground fighting with Lopez, and said, "Let me shoot this one. I've already shot the other son-of-a-bitch." Zuniga then shot at Noriega. Although there was other evidence which was contradictory, and conflicting evidence was given by some of the State's witnesses, there was sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant, Zuniga, was guilty of the offense of murder. It is the jury's province to draw inferences from the evidence and to determine the credibility of the witnesses and the weight to be given to their testimony. (*People v. Lee, 48 Ill.2d 272; People v. Nicholls, 44 Ill.2d 533.*) We will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Mills, 40 Ill.2d 4, 19.*) The judgments of the appellate court reversing the convictions of the defendant are reversed and the judgments of the circuit court of Cook County are affirmed.

*Appellate court reversed; circuit court affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.