THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTHUR DEAN ANDERSON, Defendant-Appellant.

Fourth District   No. 4—82—0112

Opinion filed January 26, 1983.

S. John Muller, of Charleston, for appellant.

Nancy Owen, State's Attorney, of Charleston (Robert J. Biderman and Michael W. Hogan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

Following a jury trial, defendant was convicted of burglary in violation of section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 19—1(a)). He was sentenced to eight years in the Department of Corrections with credit for 246 days which he spent in custody prior to sentencing.

Defendant's first contention on appeal is that he was not brought to trial within 120 days of the beginning of his incarceration as required by section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a)). The defendant was arrested on May 29, 1981, and was charged with burglary by means of an information filed on June 2, 1981. His jury trial was originally set for August 4, 1981. On July 27, 1981, defendant filed a motion for a change of judge, which was granted on July 29, 1981. Defendant filed his motion for discharge pursuant to section 103—5(d) of the Code (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(d)) on September 25, 1981, alleging that he had been incarcerated for a period in excess of 120 days without having been brought to trial. This motion was denied on September 29, 1981, the day that defendant's jury trial began. In his oral ruling on the motion for discharge, the trial judge attributed at least one week's delay to defendant's request for a change of judge.

Section 103—5(a) and (f) of the Code provides in pertinent part:

"Speedy trial. (a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless

delay is occasioned by the defendant ***.

        * * *

(f) Delay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried as prescribed by subparagraphs (a), (b), or (e) of this Section and on the day of expiration of the delay the said period shall continue at the point at which it was suspended." (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(a), (f).)

A motion for a substitution of judges constitutes a delay occasioned by a defendant for purposes of the above statutory provision. (*People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595.) In determining whether a defendant who filed a motion for a change of judge was tried within the time limit prescribed by section 103—5(a), it is obviously necessary to determine the length of the delay attributable to the defendant. This determination is best made by the trial judge, who possesses knowledge of the conditions and circumstances of his circuit and is thus in the best position to evaluate the time necessary to complete the administrative steps involved in a reassignment of judges. The trial judge's determination as to the length of delay occasioned by such a motion should be sustained unless it is apparent that the court abused its discretion in making that decision. *People v. McClure* (1979), 75 Ill. App. 3d 566, 394 N.E.2d 833.

When a case is reassigned from one judge to another, it loses whatever seniority it had on the original judge's calendar; it must be returned to the chief judge for reassignment; and it probably assumes a place at the bottom of the new judge's list of pending cases. In other words "reassignment start[s] anew the administrative procedure of bringing the defendant's [case] to trial." (*People v. Zuniga* (1973), 53 Ill. 2d 550, 554, 293 N.E.2d 595, 597.) In view of the above considerations and the generally prevalent congestion existing in the courts of even comparatively small counties such as. Coles, we cannot say that the trial court abused its discretion in allocating a delay of one week to defendant's motion for a change of judge. Thus for purposes of section 103—5(a) of the Code of Criminal Procedure of 1963 defendant was brought to trial within 116 days of his initial incarceration (see *People v. Woodruff* (1980), 90 Ill. App. 3d 236, 412 N.E.2d 1171 (time elapsed for purposes of section 103—5(a) is computed by skipping day when custody begins and counting the day when trial begins)). It follows that the trial court did not err in denying his motion for discharge.

Defendant also asserts that the evidence which the State presented at his preliminary hearing was insufficient to establish proba-

ble cause that he had committed a burglary (see Ill. Rev. Stat. 1981, ch. 38, par. 109—3(a)), and that the court therefore erred in denying his motion to dismiss the burglary charge at the conclusion of the hearing. The State's sole witness at the preliminary hearing was Captain David O'Dell of the Mattoon police department, who testified that he interviewed defendant on April 4, 1981, after receiving information from two persons that defendant had been involved in a burglary at the Patricia Messick residence. The defendant told O'Dell that he went to the Messick residence with Joe Horath and Bud Zyke with the intent of stealing an HBO unit. The defendant broke a back window of the home, but the three were chased away by a neighbor. A day or two later, Horath came to defendant's residence with an HBO unit, which he said was from the Messick residence. Horath wanted to sell the unit, and defendant accompanied him to Albert Hite's garage where they sold it for $20 cash, which they divided between them.

■ The above evidence, which consists of an account of defendant's confession to the effect that he was involved in the burglary with which he was charged, falls under the exception to the hearsay rule pertaining to admissions. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 246 N.E.2d 269; *People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) Even if Captain O'Dell's hearsay account of defendant's confession was not subject to one of the hearsay rule exceptions, however, it would nevertheless have been admissible at the preliminary hearing. (*People v. Velez* (1966), 72 Ill. App. 2d 324, 219 N.E.2d 675.) In our view, defendant's statement, as related by Officer O'Dell, that he broke a window at the Messick residence after he and two companions arrived there with the intent of committing a burglary, was in itself sufficient to establish probable cause that defendant had participated in the commission of a burglary. Cf. *People v. Bonner* (1967), 37 Ill. 2d 553, 229 N.E.2d 527 (preliminary hearing may be terminated once probable cause is established).

■ Defendant cites only two cases, *People v. Williams* (1975), 28 Ill. App. 3d 402, 328 N.E.2d 682, and *People v. Davis* (1972), 3 Ill. App. 3d 738, 279 N.E.2d 179, in support of his position on the probable cause issue. He emphasizes the statement of the *Davis* court that the mere breaking of a hole in a wall does not constitute burglary and the statement in *Williams* that the throwing of a brick through a window is not an entry for purposes of establishing a defendant's guilt of burglary. The question of whether defendant's breaking the window constituted an entry sufficient to establish that he committed a burglary is, however, irrelevant to the issue of whether he is respon-

sible for the burglary on the basis of the accountability theory, which is an alternative to the nature of proof required to convict one of a substantive offense. (*Williams.*) Evidence was presented that defendant broke the window with the intent of facilitating the burglary of the Messick residence which Horath later completed. This was all that was necessary to establish probable cause that defendant was accountable for the burglary.

The defendant's remaining allegations of error require an account of the evidence presented at his trial. Patricia Messick testified that in early April 1981, she noticed a broken window in her home. Two or three days later, she noticed that the HBO unit on her television was missing. At the time she noticed the missing unit, she observed that the same window which had previously been broken had been broken a second time. There was a larger hole in it than when she first noticed it broken.

Officer Carl Smith of the Mattoon police department stated that at approximately 10:25 p.m. on April 4, 1981, he was called to the Messick home to investigate the theft of an HBO unit. When he arrived at the residence, he noticed a broken window in the southeast bedroom.

The State's next witness was Joseph C. Horath, who testified that on the evening of April 1, 1981, he, defendant, and Lonnie Zykes were attending a birthday party for defendant's brother at defendant's mother's home. (Bud Zykes and Lonnie Zykes are apparently the same person; during his testimony, Horath used the two names interchangeably to refer to the third person who accompanied him and the defendant to the Messick home.) At defendant's urging, he and Zykes accompanied defendant to the Messick home, where defendant broke a window. Someone then chased them off, but defendant and Horath later returned to the Messick home. While defendant waited outside "watching for neighbors or somebody," Horath opened the broken window and took the HBO unit off of the TV. They then split up and Horath hid the unit in some weeds. About two days later, defendant and Horath went to Albert Hite's garage where they met George Stewart. Stewart said that he was interested in the HBO unit. Horath then went to get the unit, and upon his return, Stewart paid him $20 for it. Horath subsequently rejoined defendant, who had been talking to Hite, and they each bought a six-pack of beer, dividing the remainder of the money between them.

On cross-examination, Horath admitted that he had on prior occasions stated that defendant had nothing to do with the burglary. He said this because he felt threatened by his and defendant's friends.

Horath further testified that the authorities promised to try to get him three years' probation on a burglary charge arising out of the break-in at the Messick home if he would testify and cooperate in the investigation of the case.

Albert Hite, who had a prior burglary and theft conviction, testified that in the spring of 1981, Horath and defendant came to his place of business, carrying something in a sack. Defendant stated that the contents of the sack were "kind of warm" (meaning that the contents were stolen), whereupon Hite said that he did not even want to talk about it, and turned around and walked away. Both defendant and Horath then had a conversation with George and John Stewart. Hite had no idea as to what happened after the beginning of Horath's and defendant's conversation with the Stewarts.

Officer O'Dell of the Mattoon Police Department recounted his interview with defendant. His testimony as to the contents of defendant's confession was substantially the same as at the preliminary hearing, except that he stated that according to defendant, Horath came to defendant's home with an HBO unit on the evening of the burglary, as opposed to a day or two after the burglary. O'Dell also described a conversation that he had with Horath in which Horath initially stated that defendant was not involved in the burglary. Horath later changed his story and said that he made the initial statement because of threats from defendant's family. O'Dell also testified that to his knowledge, no promises of leniency had been made to Horath in connection with his testimony at defendant's trial.

The defendant presented two alibi witnesses. The first, Albert Smith, testified that he was at a party with defendant from approximately 5 p.m. until midnight on April 4, 1981. The second alibi witness, defendant's mother, maintained that on the same evening, defendant was at a party at a trailer next door to the trailer in which she lived, and that he returned to her trailer about 12 or 12:30 a.m. where he remained the rest of the night.

Defendant's next witness was Lonnie Zykes. His testimony generally corroborated that of the earlier witnesses as to events on the evening of April 1, 1981. He also testified that defendant did not break the window by putting his fist through it, but caused the glass to break by hitting the edge or side of the window which apparently caused the glass to shatter. This contradicted an earlier statement which Zykes made to the police to the effect that defendant put a fist through the window pane.

Defendant next testified on his own behalf. He stated that on the evening of April 1, 1981, he broke a window at the Messick residence

"with my fist," but that he did not otherwise assist Horath in the commission of the burglary. After he and his companions were chased off, he returned to his mother's home and went to bed within a half hour. He further testified that on April 4, 1981, he was at a party in the vicinity of his mother's home from about 5 p.m. until about 1 a.m. After the party, he returned home where he remained for the rest of the night. Defendant denied making a statement to Officer O'Dell to the effect that he broke the window or was in any other way involved with the burglary of the Messick home.

Officer O'Dell, recalled on rebuttal, testified that defendant had three prior felony convictions. He also reaffirmed his earlier testimony as to defendant's confession. Defendant apparently changed his mind often and made somewhat contradictory statements during his interview with O'Dell. Officer Plummer of the Mattoon police department, also called on rebuttal, stated that he was present during the first 5 to 10 minutes of O'Dell's interview with defendant. During that time, defendant maintained that he was not at the Messick residence when the burglary occurred.

■ Defendant asserts that evidence of the sale of the stolen HBO unit at Hite's garage should not have been admitted because complicity after an offense is not proof of complicity in the initial offense itself, and because proof that one is an accessory after the fact is proof of an independent offense. On the basis of the defendant's own testimony at trial, it is readily apparent, however, that defendant participated in the burglary from its inception in that he broke a window in order to assist Horath in gaining entry to the burglarized premises. Therefore, the trial court acted properly in admitting evidence of the sale of the HBO unit, for defendant's statement that the contents of the bag containing the HBO unit were "warm" was probative of defendant's knowledge of the burglary, and the evidence of defendant's sharing in the proceeds of the sale of the stolen property was relevant to defendant's design and motive in committing an act which facilitated Horath's entry to the burglarized premises. See *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290.

■ Defendant also asserts that the trial court improperly refused to instruct the jury with reference to the evidence of sale of the stolen HBO unit, that "[p]roof that a person is an accessory after the fact is proof of an independent offense." The short answer to this contention is that the defendant was charged only with burglary; he was not charged with any other offense. Moreover, there was unrefuted evidence that defendant was involved in the burglary from its

very beginning, and the evidence concerning the sale of the HBO unit was probative of defendant's knowledge, motive, and design in assisting Horath in the burglary. Since defendant's proposed instruction would have only confused the jury, the trial court did not err in rejecting it.

The issue presented in defendant's final argument on appeal is described in the points and authorities section of defendant's brief as whether he was proved guilty beyond a reasonable doubt. An examination of the rather garbled argument in support of this point and the authorities cited therein reveals that defendant actually advances three separate arguments under this heading. We first consider defendant's contention that he was not proved guilty of burglary beyond a reasonable doubt. Defendant cites no authority in support of this argument, but simply points to various inconsistencies and conflicts in the testimony of some of the witnesses. A description of the testimony to which defendant refers would unnecessarily lengthen this opinion. It is sufficient to state that we have carefully examined the record, and find that the evidence presented at trial, particularly defendant's admission that he broke the window after he and his companions made sure that Ms. Messick was not at home, Officer O'Dell's testimony as to defendant's confession, and Hite's and Horath's account of the circumstances surrounding the sale of the HBO unit, is more than sufficient to establish that defendant is beyond a reasonable doubt guilty of burglary on the basis of the accountability theory. That some of the evidence which supports defendant's guilt was contradicted by other evidence is of no consequence, for the jury, as sole judge of the witness' credibility, was justified in believing the credible evidence which supported defendant's guilt and in disregarding conflicting evidence. See *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671.

■ Defendant further asserts that he effectively withdrew from the burglary prior to its consummation, since several days elapsed between the time that he broke the window and the time that Horath took the HBO unit. The relevant portion of the accountability statute provides as follows:

"(c) *** However, a person is not so accountable, unless the statute defining the offense provides otherwise, if:

* * *

(3) Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the

proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense." (Ill. Rev. Stat. 1981, ch. 38, par. 5—2.)

Even assuming the defendant's allegation as to the time gap between the breaking of the window and the theft of the HBO unit to be true, the record contains no affirmative evidence that the defendant made any effort to deprive the assistance which he rendered Horath by breaking the window of its effectiveness, or that he otherwise tried to prevent Horath's effectuation of the burglary. It is manifest that defendant did not withdraw from the burglary within the meaning of the accountability provision of the Criminal Code of 1961.

■■ Finally, defendant maintains that he was improperly tried and convicted of burglarizing the Messick home because at the time of defendant's trial, Horath had not been convicted of an offense on the basis of his role in the burglary. As support for this argument, defendant relies solely on *United States v. Stevison* (7th Cir. 1972), 471 F.2d 143. *Stevison* holds that an aider and abetter may not be convicted of a crime absent the conviction of the principal. This rule is strictly a rule of Federal criminal procedure, which is not binding on this court, since the *Stevison* court did not premise its holding on constitutional grounds. The rule that an accomplice in crime may not be convicted prior to the conviction of the principal has not previously been adopted by Illinois courts, and defendant suggests no sound policy reasons for our embracing such a rule. We therefore hold that the court did not err in trying defendant before Horath had been convicted of any offenses arising out of the theft of the HBO unit from the Messick home.

For all of the foregoing reasons, we affirm defendant's burglary conviction.

Affirmed.

MILLS and TRAPP, JJ., concur.