# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Dennis*, 2011 IL App (5th) 090346

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN L. DENNIS, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-09-0346 |
| Rule 23 order filed<br>Motion to publish<br>granted | August 10, 2011<br><br>August 31, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for the armed robbery of a liquor store, the trial court did not abuse its discretion in admitting a video recording and still photographs from surveillance cameras where the State presented sufficient proof under the silent-witness theory of the reliability of the process that produced the video and the photographs, and the trial court did not abuse its discretion in finding that the delay of defendant's trial caused by his motion to substitute judges was attributable to him and that his right to a speedy trial was not violated. |
| Decision Under Review | Appeal from the Circuit Court of Jefferson County, No. 08-CF-541; the Hon. Terry H. Gamber, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Johannah B. Weber, and Pamela Lacey, all of State Appellate Defender's Office, of Mt. Vernon, for appellant. |
| | Nicole Villani, State's Attorney, of Mt. Vernon (Patrick Delfino, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE WELCH delivered the judgment of the court, with opinion. Justices Donovan and Spomer concurred in the judgment and opinion. |

**OPINION**

¶ 1    The defendant, Brian L. Dennis, appeals from his conviction for armed robbery with a knife of the manager at the Times Square Liquors store. He was found guilty by a jury sitting in the circuit court of Jefferson County and was sentenced to an eight-year term of imprisonment. He raises only two issues on appeal: whether the circuit court erred in denying his motion to dismiss based on the violation of his statutory right to a speedy trial when that trial was delayed as a result of his motion to substitute judges and whether the circuit court erred in allowing into evidence a video recording and still photographs made from the surveillance cameras operating at the liquor store that he was charged with robbing. For reasons that follow, we affirm.

¶ 2    We turn first to the speedy trial issue. The defendant was charged by information, and taken into custody, on November 14, 2008. The defendant's motion for a bail reduction was denied and the defendant remained in custody throughout these proceedings. The trial was scheduled to begin March 10, 2009, within 120 days of the defendant's arrest.

¶ 3    On March 4, 2009, a pretrial conference was held before Judge Gamber, at which the defendant's jury trial was confirmed for March 10, 2009. Thereafter, Judge Tedeschi was assigned to preside over the defendant's jury trial. The defendant promptly exercised his statutory right to substitute judges. The oral motion was heard by Judge Gamber on March 9, 2009, one day before the defendant's jury trial was scheduled to begin. Acknowledging that the defendant had an absolute statutory right to substitute judges in the case, the prosecutor nevertheless objected to any delay in the trial, citing the defendant's concomitant statutory right to a speedy trial. The prosecutor insisted that he was ready for trial and asked that any delay be attributed to the defendant for speedy trial purposes. The defendant declined to respond.

¶ 4    Judge Gamber acknowledged that the defendant had the right to substitute judges and granted the defendant's motion. Judge Gamber further found that any delay in the jury trial was occasioned by the defendant and not by the State and asked the defendant if he

understood that this would delay the start of his jury trial. Defense counsel responded that the defendant was not waiving his right to a speedy trial but still wished to substitute judges. Thereupon the court granted the motion to substitute judges, assigned the case to himself, and rescheduled the jury trial for March 24, 2009. The court attributed the delay to the defendant for speedy trial purposes.

¶ 5        On March 17, 2009, the defendant filed a motion to dismiss the charges against him on the ground that his statutory right to a speedy trial had been violated by the delay. The motion argued that the delay should not be attributed to him because doing so forces him to choose between his right to substitute judges and his right to a speedy trial.

¶ 6        The motion to dismiss was heard March 20, 2009. The defendant pointed out that Judge Tedeschi had not been assigned to hear the defendant's jury trial until March 6, 2009, just four days before the trial was scheduled to begin, and that the defendant had promptly filed his motion to substitute. The prosecutor responded that he had been ready for trial and had done nothing to contribute to the delay. The motion to dismiss was denied. The defendant appeals.

¶ 7        Illinois law requires that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2010). Any person not tried in accordance with this section must be discharged from custody. 725 ILCS 5/103-5(d) (West 2010). A delay is occasioned by the defendant and charged to the defendant when the defendant's acts caused or contributed to a delay resulting in the postponement of the trial. *People v. Kliner*, 185 Ill. 2d 81, 114 (1998).

¶ 8        Illinois law also provides that a criminal defendant has an absolute right, within 10 days after a cause has been placed on the trial call of a judge, to move the court for a substitution of that judge on the ground that the judge is prejudiced against him. 725 ILCS 5/114-5(a) (West 2010). The defendant exercised this right in the case at bar, resulting in his jury trial being assigned to a different judge and placed on that judge's trial schedule. The trial was delayed by 14 days.

¶ 9        We begin with the standard of review. The trial court's determination regarding who is responsible for the delay of a trial is entitled to much deference and should be sustained absent a clear showing that the trial court abused its discretion. *People v. Kliner*, 185 Ill. 2d 81, 115 (1998).

¶ 10        The supreme court has long held that a motion for a substitution of judges constitutes a delay occasioned by the defendant for purposes of the speedy trial statute. *People v. Lucien*, 66 Ill. App. 3d 280, 291 (1978) (citing *People v. Spicuzza*, 57 Ill. 2d 152, 155 (1974)); *People v. Zuniga*, 53 Ill. 2d 550, 553 (1973). Accordingly, the court in the case at bar did not abuse its discretion in attributing to the defendant any delay caused by his motion to substitute judges.

¶ 11        Determining the length of the delay that is attributable to the defendant's motion and not to other causes is also best left to the circuit judge, who possesses knowledge of the conditions and circumstances of his circuit and is thus in the best position to evaluate the time necessary to complete the administrative steps involved in a reassignment of judges.

*People v. Anderson*, 112 Ill. App. 3d 270, 272 (1983). The circuit court's determination with regard to the length of delay occasioned by the motion should be sustained unless it is apparent that the court abused its discretion in making that decision. *Anderson*, 112 Ill. App. 3d at 272. As explained in *Anderson*:

> "When a case is reassigned from one judge to another, it loses whatever seniority it had on the original judge's calendar; it must be returned to the chief judge for reassignment; and it probably assumes a place at the bottom of the new judge's list of pending cases. In other words, 'reassignment start[s] anew the administrative procedure of bringing the defendant's [case] to trial.' " 112 Ill. App. 3d at 272 (quoting *People v. Zuniga*, 53 Ill. 2d 550, 554 (1973)).

¶ 12    In the case at bar, upon granting the defendant's motion to substitute judges, the circuit judge immediately reassigned the case to himself and went off the record to discuss with counsel a mutually agreeable date for the trial. This discussion is not contained in the record on appeal, but after the off-record discussion, the court immediately announced on the record that the jury trial would be held just 14 days later. The defendant did not object that an earlier date was available, and there is no indication in the record that the court did not set the trial on its first available date. Accordingly, the circuit court did not abuse its discretion in finding that the entire period of delay was due to the defendant's motion to substitute judges and therefore was attributable to the defendant.

¶ 13    The two cases relied upon by the defendant are distinguishable. In *People v. Macklin*, 7 Ill. App. 3d 713 (1972), a judge was assigned to hear the defendant's trial on the 120th day. The defendant filed a motion to substitute judges, which was granted, and the case was referred to the chief judge for reassignment. Despite the fact that there were at least two judges available to preside over the trial on that date, no trial was held. The defendant's motion to dismiss based on a violation of his speedy trial right was granted. The State appealed.

¶ 14    On appeal, the court held that a substitution of judges under the statute is not delay *per se* chargeable to the defendant. *Macklin*, 7 Ill. App. 3d at 715. The court held that because the delay of the defendant's trial was not unavoidable, there being two judges available to hear the trial within the speedy trial period, the circuit court did not abuse its discretion in finding that the delay was *not* attributable to the defendant and discharging the defendant. *Macklin*, 7 Ill. App. 3d at 715-16. The court held that a defendant has a statutory right to a speedy trial and a statutory right to substitute judges, and the court stated, "Neither right may be precluded by the other nor may a defendant be forced to choose between the two *when an exercise of both rights will not cause an unavoidable delay*." (Emphasis added.) *Macklin*, 7 Ill. App. 3d at 715-16. The *Macklin* court expressly held that it was not deciding the question in a factual situation where the exercise of both statutory rights *would* cause an unavoidable delay. 7 Ill. App. 3d at 716.

¶ 15    The case at bar presents the factual situation that the *Macklin* court did not address: where the exercise of both the defendant's statutory rights *would* cause an unavoidable delay. In the case at bar, there is no indication in the record that any judge or trial setting was available to hear the defendant's case during the 120-day speedy trial period. A delay beyond

that period was an unavoidable consequence of the defendant's exercise of his statutory right to substitute judges. Nor is there any indication in the record that the earliest setting was not chosen for the defendant's trial. Accordingly, the circuit court did not abuse its discretion in denying the defendant's motion to dismiss.

¶ 16    In *People v. McClure*, 75 Ill. App. 3d 566 (1979), the defendant's motion for a substitution of judges was granted, and nearly two months later the defendant filed his motion to dismiss based on a violation of his statutory right to a speedy trial. This motion was granted and the State appealed. On appeal, the court found that it was necessary to determine the length of the delay that was actually attributable to the defendant's motion. *McClure*, 75 Ill. App. 3d at 570. The court pointed out that this determination should be made by the trial judge, who would be possessed of knowledge of the conditions and circumstances of the circuit court and would be better able to evaluate the time necessary to complete the requisite administrative procedures involved in substituting judges. *McClure*, 75 Ill. App. 3d at 570. The court further held that the circuit court's determination should be sustained unless it is clearly shown that the court below abused its discretion. *McClure*, 75 Ill. App. 3d at 570.

¶ 17    In *McClure*, the circuit court did not abuse its discretion in concluding that during the delay the State had taken no action in bringing the defendant to trial. 75 Ill. App. 3d at 570. While the defendant had temporarily suspended the speedy trial period by his motion to substitute judges, he could not be held accountable for the entire two-month delay, and the brunt of the delay rested with the State. *McClure*, 75 Ill. App. 3d at 570-71. The granting of the defendant's motion to dismiss was affirmed. *McClure*, 75 Ill. App. 3d at 571.

¶ 18    In the case at bar, there is no indication in the record that any part of the 14-day delay in the defendant's trial is attributable to the State. The record reflects that immediately upon the granting of the defendant's motion to substitute judges, the trial was rescheduled for the first available date.

¶ 19    Finally, the defendant argues that he should not be forced to choose between two statutory rights–the right to a speedy trial and the right to substitute judges. We note, however, that anytime a defendant files a motion which delays his trial he makes just such a choice. It is, in the end, the defendant's choice, and in the case at bar, the defendant chose to exercise his right to substitute judges at the expense of his right to be tried within 120 days of his arrest. The circuit court did not abuse its discretion in finding that the two-week delay in the defendant's trial as a result of the filing of his motion to substitute judges was attributable to him and that the defendant's statutory right to a speedy trial was not violated.

¶ 20    The defendant's next argument relates to the admission into evidence of a copy of the surveillance video taken at the scene of the armed robbery, as well as three still photographs of the defendant produced from that video. The defendant argues that the circuit court erred in admitting this video because the State failed to establish a sufficient foundation.

¶ 21    Prior to the trial, the defendant filed a motion *in limine* seeking to bar the admission of the video because Rick Hicks, who had produced the CD from the surveillance camera hard drive and would be a necessary witness to lay a proper foundation for the video, had not been listed as a State witness. Hicks owned the surveillance video company and had been asked

by the police to come to the scene of the crime and download the video taken by the surveillance cameras onto a CD. Hicks was also asked by the police to print three still photographs from the surveillance video. At the hearing on the motion *in limine*, the defendant argued, "It would seem to me for somebody to say that is fair and accurate representation to say what occurred within Times Square Liquor that Rick Hicks would be a necessary witness to lay a foundation." The defendant further argued, "[A] video surveillance system, whether or not it's operating properly and–and no time lapse in the time lost in the video, think it might be essential for a foundation case." The circuit court denied the motion *in limine*.

¶ 22    The law recognizes two ways to provide a foundation for the admission of an audio or visual recording. *People v. Taylor*, 398 Ill. App. 3d 74, 83 (2010), *appeal allowed*, 237 Ill. 2d 585 (2010). The necessary foundation depends on whether a witness can authenticate the contents of the recording based on personal observation of the event on the recording or authenticate the workings of the device and process that produced the recording. *Taylor*, 398 Ill. App. 3d at 83. The traditional foundation occurs where a witness is available and can authenticate the content of the recording by testifying that the recording accurately represents what he or she personally saw or heard. *Taylor*, 398 Ill. App. 3d at 83. The court can then admit the recording as demonstrative evidence. *Taylor*, 398 Ill. App. 3d at 83. In that case, additional authentication, such as a chain of custody, is not necessary. *Taylor*, 398 Ill. App. 3d at 83.

¶ 23    Alternatively, a court can admit a recording as primary, substantive evidence based on a foundation that establishes the recording's authenticity by other means. *Taylor*, 398 Ill. App. 3d at 83. When, as in the case at bar, the recording is a visual recording, courts often describe this as authentication under a silent-witness theory. *Taylor*, 398 Ill. App. 3d at 83. Under the silent-witness theory, a recording may be admitted without the testimony of an eyewitness if there is sufficient proof of the reliability of the process that produced the recording. *People v. Vaden*, 336 Ill. App. 3d 893, 898 (2003). A video recording may be admissible under the silent-witness theory when the State introduces evidence on the capability of the device for recording, the competency of its operator, the proper operation of the device, the preservation of the recording with no changes additions or deletions, and the identification of the persons, locale, or objects depicted sufficient to make a clear showing of relevance. *Taylor*, 398 Ill. App. 3d at 90. This burden implicitly includes a preservation of a chain of custody and an explanation of any copying so that during that process there were no changes, additions, or deletions. *Taylor*, 398 Ill. App. 3d at 90. This method of authentication is the same method used to authenticate audiotapes when there is no party to the conversation present to testify at the trial. *Vaden*, 336 Ill. App. 3d at 898.

¶ 24    The defendant argues that the State failed to lay any foundation for the admission of the videotape and photographs. He argues that no traditional foundation was presented in that no witness testified that the recording or photographs accurately represent what he or she personally saw and no silent-witness foundation was presented because no witness testified to the capability of the devices used for recording, the competency of the operators, the proper operation of the recording devices, or the preservation of the recording without changes, additions, or deletions.

¶ 25    At the trial, crime scene investigator Roger Hayse testified that he heard the dispatch about the robbery and proceeded directly to the liquor store. The victim of the robbery was there and was injured and bleeding; he was taken from the scene in an ambulance. Hayse noticed that items were strewn about on the floor and that the floor was wet with some liquid. It appeared there had been some kind of struggle behind the counter.

¶ 26    Hayse telephoned Ricky Hicks, the proprietor of the company that had installed the surveillance system in the liquor store, and asked him to come down to the store and burn a copy of the surveillance video to a CD. Hicks arrived within 20 minutes. Hicks and Hayse first viewed the video on the screen at the store and saw what it contained. Hayse then asked two other officers to come in and view the video on the screen at the store. Hicks then burnt two copies of the surveillance tape onto two CDs, which he gave to Hayse. Hayse took one of the CDs back to his office and put his label on it, showing that it was burnt by Hicks on November 12, 2008. Hayse testified that the events depicted on the CD are a true and accurate copy of the surveillance video he had viewed at the store. At this point in the trial, the CD was admitted into evidence and permission granted to publish it over the defendant's objection.

¶ 27    The decision to admit a piece of evidence rests in the sound discretion of the circuit court. *Taylor*, 398 Ill. App. 3d at 89. We find no abuse of discretion in the circuit court's decision to admit the video recording and still photographs into evidence. The State presented sufficient proof of the reliability of the process that produced the video recording and photographs for them to be admitted under the silent-witness theory.

¶ 28    We note that neither in the circuit court nor before this court does the defendant make a colorable claim that the recording is not authentic or accurate. " 'Unless the defendant produces actual evidence of tampering, substitution, or contamination, the State need only establish a probability that tampering, substitution, or contamination did not occur.' " *Taylor*, 398 Ill. App. 3d at 86 (quoting *People v. Garth*, 353 Ill. App. 3d 108, 114 (2004)). Any deficiencies go to the weight rather than the admissibility of the evidence. *People v. Payne*, 239 Ill. App. 3d 698, 706 (1993). Even if one link in the chain of custody is missing, if there is testimony describing the condition of the evidence when delivered that matches the description of the evidence when examined, the evidence is sufficient to establish a chain of custody. *Payne*, 239 Ill. App. 3d at 706. The circuit court did not abuse its discretion in admitting the video recording and still photographs copied therefrom into evidence.

¶ 29    For the foregoing reasons, the judgment of the circuit court of Jefferson County is hereby affirmed.

¶ 30    Affirmed.