NOTICE
Decision filed 12/30/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 180525-U

NO. 5-18-0525

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 17-CF-510 |
| | ) | |
| ARTHUR ECKLES JR., | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Where there was no arguably meritorious contention that defendant was not proved guilty beyond a reasonable doubt or that the trial court erred by including a 15-year firearm add-on in his sentence, admitting opinion evidence that one of the participants in a robbery was more than six feet tall, or admitting surveillance videos from two locations, we grant defendant's appointed counsel leave to withdraw and affirm defendant's conviction and sentence.

¶ 2     Following a jury trial, defendant, Arthur Eckles Jr., was convicted of armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)) and sentenced to 31 years' imprisonment.  He appealed.

¶ 3     Defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing that this appeal presents no arguably meritorious issues. See *Anders v. California*, 386 U.S. 738 (1967).  OSAD has notified defendant of its motion.  This court provided defendant with ample opportunity to file a response, but he has not done so.  After

1

reviewing the record and considering OSAD's motion and supporting memorandum, we agree that this appeal presents no issue of even arguable merit. Therefore, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 4                                    BACKGROUND

¶ 5      Two men wearing masks robbed a Circle K in Carbondale on October 13, 2017. The shorter of the two wore a mask that witnesses described as looking like a mandrill, while the taller man wore a clown mask. The pair ordered clerk John McGuinnis to open the safe but he was unable to do so because it was on a time lock. The shorter man took a small amount of cash from the register while the other man took Newport cigarettes off a shelf before both men fled on foot.

¶ 6      Count I of the indictment alleged that defendant, "while acting together and in concert with others," took money and cigarettes. At trial, the State's theory was that defendant was the robber wearing the clown mask. Its evidence of this, while circumstantial, was considerable.

¶ 7      McGuinnis estimated that the taller robber was at least six feet tall. The shorter man stood right next to McGuinnis and pointed a gun at him. McGuinnis, who was focused on that man, did not see the other with a gun, but surveillance video showed the second man with a gun at one point.

¶ 8      Mark Taylor, a would-be patron of the store, testified that as he pulled into the parking lot, he saw a tall man wearing a clown mask leaving the store. From seeing the back of his head, he could tell that he was African-American. Shortly after the robbery, a Carbondale police officer observed a black Toyota with license number AA 73318, driven by a black male and with at least one passenger, coming from the direction of the Circle K.

¶ 9      Shona Garner testified that she purchased cigarettes from defendant. By tracing their tax stamp numbers, police established that the cigarette packs she purchased were among those stolen from the Circle K.

2

¶ 10    On October 19, 2017, a Murphysboro police officer pursued a black Toyota that was reportedly seen leaving the scene of a burglary. The Toyota's license number was AA 73318. Both occupants fled although the officer eventually apprehended the driver, Travis Taylor. The passenger was later identified as Edward Willis. He had occupied the front passenger seat, where the clown mask was found. DNA analysis of the mask found Willis's DNA and that of at least three other contributors. However, none was suitable for comparison. After defendant's arrest, police searched his suitcase and backpack, which contained clothing matching that worn by the clown-masked robber, as well as Newport cigarettes. Surveillance video from a nearby liquor store, recorded a few hours before the Circle K robbery, showed defendant wearing the same clothing as the clown robber.

¶ 11    During a recorded interrogation, defendant gave inconsistent and often illogical answers to questions. For example, he denied being at the liquor store, but later admitted that he was there. Defendant denied involvement in the Circle K robbery, claiming to have been with his girlfriend at the time. However, his girlfriend testified that she was not with defendant on October 12 or 13.

¶ 12    Detective Brandon Weisenberger described the surveillance video from Circle K. He noted that the store had tape adjacent to the entrance to aid in estimating the height of anyone entering. He noted that the robber in the clown mask was even with the six-foot marker despite entering in a crouching position. He estimated that the robber's full height was at least 6 feet, 2 inches tall. He also noted that the clown robber's feet were pointed outward when he was kneeling on the floor. Evidence established that defendant had recently had surgery. Defendant's phone contained Travis Taylor's phone number in its contacts list, and records showed at least two calls between defendant and Taylor shortly before the robbery.

¶ 13    The jury found defendant guilty. The trial court denied his posttrial motion.

¶ 14    The presentence investigation report showed that defendant had federal convictions for possessing cocaine base with the intent to distribute and for carrying a firearm during a drug trafficking offense. He also had state convictions for drug possession with intent to distribute and driving while intoxicated. The court sentenced defendant to 31 years' imprisonment, including a 15-year add-on for using a firearm during the offense. Defendant timely appealed.

¶ 15                                          ANALYSIS

¶ 16    OSAD concludes that it can make no arguably meritorious contention of reversible error in the proceedings below. OSAD identified three possible issues but concludes that none has even arguable merit.

¶ 17    OSAD first concludes that there is no merit to an argument that the trial court erred by adding the 15-year firearm enhancement to defendant's sentence. Defendant argued below that, given the language of the indictment, it was conceivable that the jury found him guilty solely on a theory of accountability and that imposing the firearm enhancement under those circumstances would violate due process. OSAD notes that evidence established that the clown robber personally possessed a weapon during the robbery but that, even if defendant was guilty only by accountability, the firearm enhancement was proper. We agree.

¶ 18    As OSAD observes, the most likely scenario based on the evidence is that defendant was the robber wearing the clown mask. Although McGuinnis was understandably focused on the other robber, who held a gun a short distance from his head, the surveillance video showed the clown robber with a gun as well. Thus, there was ample evidence that defendant personally carried a firearm during the robbery. However, even if the jury found that defendant was guilty only by accountability, the firearm enhancement was nevertheless proper. See *People v. Rodriguez*, 229 Ill. 2d 285, 293 (2008) (defendant who aids or abets another "may be punished for any criminal

4

act any of his codefendants had done in furtherance of the crime"); see also *People v. Brown*, 2012 IL App (5th) 100452, ¶¶ 12-17 (affirming sentence where firearm enhancement added to sentence of defendant found guilty by accountability).

¶ 19    OSAD next concludes that there is no meritorious contention that Weisenberger invaded the jury's province by opining that the robber wearing the clown mask was at least 6 feet, 2 inches tall. He did this by noting that the robber stood even with the six-foot marker on the doorframe although the man appeared to be "crouched over" upon entering the building. OSAD finds this testimony "problematic" given that the robber was not standing upright and wore a cap under the clown mask that made him appear taller. OSAD nevertheless includes that the testimony did not violate the rules governing lay-witness opinions.

¶ 20    OSAD alternatively concludes that any error in admitting Weisenberger's opinion was likely harmless in light of the other evidence of defendant's guilt. OSAD also argues that this substantial proof also forestalls any argument that the evidence was insufficient to prove defendant's guilt beyond a reasonable doubt. However, OSAD also notes that the jury sent out two notes claiming to be deadlocked so that Weisenberger's opinion may possibly have influenced the verdict.

¶ 21    In any event, there was no error in admitting the testimony. Generally, lay witnesses may testify to opinions about another person's physical characteristics, such as height. 2 Trial Handbook for Illinois Lawyers - Criminal § 63:14 (9th ed.). Moreover, Illinois Rule of Evidence 701 provides:

> "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness'

testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Ill. R. Evid. 701 (eff. Jan. 1, 2011).

Whether lay opinion identification testimony is helpful is generally based on the totality of the circumstances. *People v. Thompson*, 2016 IL 118667, ¶ 43.

¶ 22 Here, Weisenberger did not actually testify to an opinion that defendant was the person wearing the clown mask. In any event, his opinion that the clown-masked robber was tall appears to meet the rule's criteria. And, as noted, the additional evidence pointing to defendant as the clown-masked robber was substantial, such that any error in admitting Weisenberger's testimony on that point was harmless.

¶ 23 For similar reasons, we agree that a challenge to the sufficiency of the evidence would clearly lack merit. Defendant matched the general description of the second robber being a tall, African-American male. He was seen on video hours before the robbery wearing clothing identical to that worn by the robber, and had those clothes in his possession shortly afterward. He sold cigarettes shown to have been taken in the robbery. During his interrogation, he made inconsistent and illogical claims, and his girlfriend undercut his purported alibi. See *People v. Milka*, 211 Ill. 2d 150, 181 (2004) (false exculpatory statement is probative of consciousness of guilt).

¶ 24 OSAD's final proposed issue is whether the trial court erred in admitting the surveillance videos from Circle K and the liquor store. Defense counsel objected to the admission of both recordings based on the lack of foundation. However, OSAD concludes that it can make no good-faith argument that the court erred in admitting them. We agree.

¶ 25 In deciding on the admissibility of a video recording, courts consider a number of factors, including (1) the device's capability for recording and general reliability; (2) competency of the

6

operator; (3) proper operation of the device; (4) showing the manner in which the recording was preserved (chain of custody); (5) identification of the persons, locale, or objects depicted; and (6) explanation of any copying or duplication process. *People v. Taylor*, 2011 IL 110067, ¶ 35. However, the list is nonexclusive. *Id.* The dispositive issue in every case is the accuracy and reliability of the process that produced the recording. *Id.* The trial court's decision to admit a video recording into evidence will not be reversed absent an abuse of discretion. *People v. Dennis*, 2011 IL App (5th) 090346, ¶ 27.

¶ 26    Here, Jennifer Sharp, an assistant manager of the Circle K, testified that she was familiar with the use of the recording system and described how it operated. She testified that the system was functioning properly, that she personally burned the recordings onto a DVD, that there were no malfunctions during the copying process, and that there were no jumps or gaps in the recording's time stamps. In addition, McGuinnis testified that the recording accurately depicted what he personally witnessed.

¶ 27    With respect to the recording of the liquor-store surveillance, Weisenberger testified that he was familiar with that store's video surveillance system, having observed it in use "[a] couple dozen" times, and having previously operated and collected recordings from the system. He described how the system worked, and how data from the system could be copied to a thumb drive and from that to a DVD. He testified to the chain of custody, stated that he had reviewed the footage both before and after copying it to a disk, and opined that it was not altered, manipulated, or changed in any way. He did not observe any gaps in the footage or distortions in the date and time stamps on the recording. In any event, defendant admitted during his police interview that he was the person depicted on the video. Accordingly, the trial court did not err in admitting either recording.

7

¶ 28                              CONCLUSION

¶ 29    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and
affirm the circuit court's judgment.


¶ 30    Motion granted; judgment affirmed.